[No. H030980. Sixth Dist. May 2, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SALEE AMINA MOHAMMED, Defendant and Appellant.

## Counsel

Jill A. Fordyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Dorian Jung, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELIA, J.**—On June 1, 2006, the Santa Clara County District Attorney charged appellant Salee Amina Mohammed by information with one count of failure to appear while released on own recognizance (OR). (Pen. Code, § 1320, subd. (b).)[1] The information alleged that appellant had been charged with a felony when released on OR, within the meaning of Penal Code section 12022.1.[2]

---

[1] Relevant here Penal Code section 1320 provides: "(b) Every person who is charged with or convicted of the commission of a felony who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony, and upon conviction shall be punished by a fine not exceeding five thousand dollars ($5,000) or by imprisonment in the state prison, or in the county jail for not more than one year, or by both that fine and imprisonment. It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court."

[2] All unspecified statutory references are to the Penal Code.

Appellant represented herself at trial until June 9, 2006, when the trial court revoked appellant's right to self-representation. The court found that appellant was "unwilling or unable to abide by appropriate rules of procedure in courtroom protocol . . . ."

Thereafter, on July 13, 2006, the jury found appellant guilty as charged. Further, the jury found true the enhancement allegation.

On December 6, 2006, the trial court suspended imposition of sentence and granted appellant formal probation for a term of three years on the condition that she serve a one-year jail term.[3] However, the court awarded appellant 684 days credit for time served.

Appellant filed a timely notice of appeal.

On appeal appellant raises 11 different issues, the first of which is that there was insufficient evidence to convict her of failure to appear while on OR.[4] For reasons that follow we find merit in this issue. Accordingly, we reverse the judgment rendering moot appellant's remaining contentions.

*Facts*

On January 16, 2003, the Santa Clara County District Attorney filed an information in case No. CC242918, charging appellant with perjury. On July 3, 2003, appellant appeared at the master trial calendar hearing. The presiding judge set trial for December 22, 2003.

---

[3] The court imposed various fines and fees and other conditions of probation not relevant here.

[4] Appellant's remaining contentions are as follows. The trial court committed judicial misconduct in violation of her Fourteenth Amendment right to due process and Sixth Amendment right to counsel by creating an atmosphere of pervasive unfairness. The trial court violated her Sixth Amendment rights by refusing to instruct the jury as to each of the elements of the crime. The trial court erred by excluding the testimony of her expert witness. The trial court violated her Sixth and Fourteenth Amendment rights to confrontation, effective counsel and a fair trial by terminating her opening statement and examination of witnesses and by repeatedly threatening to gag her or place her in a holding cell. The trial court violated her Fourteenth Amendment and Sixth Amendment rights when it failed to grant her request for appointment of counsel. The trial court committed error when it failed to give newly appointed counsel time to prepare for trial. The trial court committed error by redacting exhibits so that the jury would not be told the substance of the underlying charge and that said charge had been dismissed. The trial court erred by refusing to admit evidence of her medical excuse as inadmissible hearsay and by failing to allow her trial counsel time to subpoena documents and authenticating witnesses. The trial court committed error by allowing introduction of exhibit 25 (appellant's agreement to appear in a different case) and then refusing to give a limiting instruction. Finally, the conviction in this case should be reversed because the cumulative error prevented her from receiving a fair trial.

On December 22, 2003, appellant's trial counsel appeared at a master trial calendar hearing and informed the presiding judge that he had "received a fax Saturday that [appellant], due to medical reasons, is not able to be here." The presiding judge ordered "OR release is revoked, and no bail warrant will issue for her arrest."

It is undisputed that at the time appellant was released from custody on the underlying case she did not sign a written agreement conforming to section 1318.[5] In fact, during trial the attorneys stipulated that there was no written promise to appear as required under section 1318 in the court file in the underlying case No. CC242918.

*Discussion*

Appellant contends that there was insufficient evidence to convict her because "[o]ne of the elements of a wilful failure to appear while out on O.R. to intentionally evade the process of the court, is that a defendant was, in fact, out on O.R." Appellant argues that to prove a defendant was out on OR, section 1318 requires a written promise to appear signed by a defendant that includes certain mandatory terms.

*Background*

After the trial court appointed counsel to represent appellant, trial counsel filed a motion for judgment of acquittal (§ 1118.1) based on the fact that the prosecution failed to prove that appellant was released on OR. To prepare for the hearing, the trial court asked the court clerk to "have a CJIC printout of docket CC242918 run . . . and both pre the prelim waiver and after the prelim waiver or after the formal arraignment in Department 24, there were—it appears that there were four appearances prior to the jury trial date of 12-22-03 where the defendant did appear, and then she did not appear on 12-22-03. [¶] So that appears to be 12-22-03, the evidence that I'm aware of in this case."

---

[5] Currently, section 1318 states, "(a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement which includes: [¶] (1) The defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending. [¶] (2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate. [¶] (3) The defendant's promise not to depart this state without leave of the court. [¶] (4) Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California. [¶] (5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release."

The trial court denied appellant's motion for judgment of acquittal concluding that under *People v. Jenkins* (1983) 146 Cal.App.3d 22 [193 Cal.Rptr. 854] there was a "possibility of substantial compliance" with the statute. Thereafter, the trial court allowed "the People to reopen and produce further evidence that the defendant was on her own recognizance and knew that."

The prosecutor stated that he would be submitting the CJIC (Criminal Justice Information Control) form as evidence. In addition, he would try to contact appellant's trial counsel to see if there was any discussion regarding appellant's duties and her responsibilities of OR release. The prosecutor stated, "Beyond that, quite candidly, I hadn't considered what additional evidence the Court would permit, but that's about it; the additional evidence of the docket and discussion with counsel and her client."

Over appellant's objection, the trial court allowed the prosecution to call Steven Avilla as an expert witness on the custom and practices relating to OR release in Santa Clara County.[6] The prosecutor asked Mr. Avilla the following hypothetical question: "Assuming a defendant represented by a—by a defense attorney of any type, their status of release is changed from release on a bail bond to release on their own recognizance, does the defendant—does the defense counsel have a professional responsibility to acquaint them with their responsibilities and obligations as a release on their own recognizance?" Over defense counsel's relevancy objection, Mr. Avilla testified, "The attorney would be required to make sure that their client understood they still had to follow up with the responsibilities that were being imposed." These responsibilities included following an order of the court to appear at specific times.

At the conclusion of Mr. Avilla's testimony, appellant again raised a motion under section 1118.1, which the court denied.

Appellant introduced the testimony of Mark Arnold, an experienced criminal defense attorney who testified as an expert witness on the issue of the requirements of OR release. Specifically, Mr. Arnold testified that a defendant released on OR has to sign a statement promising to appear; that statement must be signed before the magistrate or someone who has authority to accept that; and the defendant must agree to four different and specific conditions for release and acknowledge that specific penalties and consequences of failing to appear have been explained to them. At the conclusion of the defense case, the trial court ruled that whether a contract was created in this case was a matter of law for the court to decide. The court went on to note that the "undisputed

---

[6] It appears that Mr. Avilla is the executive director of the Legal Aid Society conflicts program in Santa Clara County who appointed defense counsel to represent appellant. Defense counsel pointed out that she had had discussion with Mr. Avilla about the case, as had Ms. Mohammed.

facts show that the terms of [section] 1318 were substantially complied with; that a legally enforceable contract did exist." Accordingly, the trial court struck the testimony of Mr. Arnold. Later, the court instructed the jury not to consider Mr. Arnold's testimony for any purpose.

Subsequently, the court instructed the jury that to find appellant guilty of the crime of willful failure to appear when released on OR, the People must prove, "One, the defendant was charged with the commission of a felony; two, the defendant was released from custody on her own recognizance; that is, her promise to appear at the date, time, and place ordered by the Court; three, the defendant willfully failed to appear as ordered; and four, the failure to appear was in order to evade the process of the Court."

*Standard of Review*

Normally, in addressing appellate claims of insufficiency of the evidence, our role "is a limited one." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) We "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

Nevertheless, here the trial court determined that as a matter of law a defendant could violate section 1320 if there has been substantial compliance by the court with the mandate of section 1318. In reviewing a trial court's interpretation of a statute, we apply an independent or de novo standard of review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

"When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) Nevertheless, the literal meaning of a statute must be in accord with its purpose. As our Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658–659 [25 Cal.Rptr.2d 109,

863 P.2d 179], "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]. . . .' "

Furthermore as our Supreme Court pointed out in *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ." One of the factors we consider in determining the legislative intent is the " 'object in view' " and the problem the Legislature was addressing. (See *Walters v. Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].)

■ Turning to the language of section 1318, we find nothing ambiguous or unclear. Specifically, as noted, section 1318 states that a "defendant *shall not be released* from custody under an own recognizance *until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement* which includes: [¶] (1) The defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending. [¶] (2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate. [¶] (3) The defendant's promise not to depart this state without leave of the court. [¶] (4) Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California. [¶] (5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release." (Italics added.) In other words, the court *shall not release* the defendant until the defendant signs the release agreement and files it with the clerk of the court or other person authorized to accept bail.

In the court below, appellant relied on *People v. Jenkins, supra,* 146 Cal.App.3d 22 (*Jenkins*) in arguing that her case should be dismissed. In *Jenkins*, the defendant was charged with receiving stolen property. (*Id.* at p. 24.) At the time Jenkins was released from custody he signed an agreement to appear that failed to include an acknowledgement that he " 'has been

informed of the consequences and penalties applicable to violation of the conditions of release.' " (*Id.* at p. 25.)[7]

Later, Jenkins failed to appear at a hearing on motions made by his attorney and a bench warrant issued for his arrest. Subsequently, Jenkins was charged with violating section 1320, subdivision (b). Following a preliminary examination, Jenkins was held to answer and an information was filed in superior court. (*Jenkins, supra,* 146 Cal.App.3d at p. 25.)

The record of the preliminary examination showed a failure to comply with section 1318, former subdivision (a)(4), under which a defendant who is released on his own recognizance must sign a written agreement acknowledging that he has been informed of the consequences and penalties of violating the conditions of his release. (*Jenkins, supra,* 146 Cal.App.3d at p. 25.) The defendant brought a section 995 motion to dismiss the information, citing the failure to comply with section 1318. The trial court granted the motion and the People appealed. (146 Cal.App.3d at p. 24.) The Third District Court of Appeal affirmed. (*Ibid.*) The court held that section 1318 expressly defines and delimits the conditions of an own recognizance release, and that, although not expressly referred to in section 1320, subdivision (b), the own recognizance release referred to therein is one which conforms to the requirements of section 1318. (146 Cal.App.3d at p. 27.) Since there was a failure of proof that each of the criteria enumerated by section 1318 was satisfied, the court held that the defendant's release pursuant to a signed but defective agreement was not on his own recognizance within the contemplation of section 1320, subdivision (b). Accordingly, the court held that the evidence was insufficient to hold the defendant to answer for trial. (146 Cal.App.3d at p. 27.) Finally, the court held that the principle that ignorance of the law does not excuse a violation thereof was inapplicable, since the Legislature had manifested a contrary intent. (*Id.* at p. 28.)

In a footnote, the *Jenkins* court stated, "No evidence was presented to show defendant was ever actually informed of the consequences and penalties of his failure to appear. On appeal, the People request this court to take

---

[7] In full, the written agreement that Jenkins signed was as follows: " 'Kenneth Jenkins, defendant herein, pursuant to the provisions of section 1318.4 of the Penal Code of the State of California, does hereby agree that if released without bail and on his own recognizance: [¶] (a) He will appear at all times and places as ordered by the Court or magistrate releasing him and as ordered by any Court in which, or any magistrate before whom, the charge is subsequently pending. [¶] (b) If he fails to do so [*sic*] appear and is apprehended outside of the State of California, he waives extradition. [¶] (c) Any court or magistrate of competent jurisdiction may revoke the order of release and either return him to custody or require that he give bail or other assurance of his appearance as provided by law . . . .' " (*Jenkins, supra,* 146 Cal.App.3d at pp. 24–25.) Apparently, the written agreement that Jenkins signed tracked the language of former section 1318.4, which was repealed effective January 1, 1982. (*Id.* at p. 25.)

judicial notice of previous agreements signed by defendant in the justice court in the prosecution for receiving stolen property which did so inform him. [¶] A motion to dismiss challenges the sufficiency of the evidence before the magistrate. We need not decide whether substantial compliance will excuse literal compliance or, if so, whether the offered proof satisfactorily establishes substantial compliance with section 1318 because this proof was not introduced at the preliminary examination. The request to take judicial notice is therefore denied. [¶] We note that a policy of accepting proof of substantial compliance in lieu of literal compliance in the instant context has little to recommend it. Literal compliance with section 1318 is easily achievable and simple to prove while resolution of recurring issues of substantial compliance would cast a significant burden on the judicial system." (*Jenkins, supra,* 146 Cal.App.3d at pp. 25–26, fn. 3.)

After reviewing the history of an OR release, the *Jenkins* court reached the following conclusion. "However else it might be characterized, a release without bail which does not comply with the specific requirements of section 1318 is not a release 'under an own recognizance.' " (*Jenkins, supra,* 146 Cal.App.3d at p. 27.) The *Jenkins* court reasoned that the "criminal conduct proscribed by section 1320, subdivision (b) is grounded in the violation of a contractual agreement between a defendant and the People; absent constitutional constraints, the Legislature has plenary power to specify the terms and conditions of that contract." (*Id.* at p. 28.)

In this case, the People contend that *Jenkins* was incorrectly decided. The People argue "section 1318 is a codification of, and limitation on, the power of the court to release a defendant on her own recognizance. Execution of a written agreement is a condition precedent that should be satisfied before the court releases a defendant on his own recognizance, but has no relevance to a violation of section 1320." We agree with the People that execution of a written agreement that satisfies all of the requirements of section 1318 is a condition precedent to the release of a defendant on his or her own recognizance. However, we cannot agree that it has no relevance to a violation of section 1320. Since it is the court that releases a defendant, to hold otherwise is to condone a court's complete disregard for a legislative enactment. In the words of the *Jenkins* court, "The People do not suggest that the courts may ignore the statutory command and devise their own criteria for release on an own recognizance and we are satisfied that they may not." (*Jenkins, supra,* 146 Cal.App.3d at p. 27.)[8]

---

[8] We remind the People, " ' "[W]here a statute requires a court to exercise its jurisdiction in a particular manner, *follow a certain procedure,* or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction." [Citations.]' " (*People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1306–1307 [12 Cal.Rptr.2d 343], italics added.)

The People argue that the "*Jenkins* court's error rests in part on its belief that sections 1318 and 1320 formed a contractual relationship between the defendant and the People. The People have no authority to release a defendant, that function is vested in the judicial branch." We point out that the use of the term "the People" in *Jenkins* refers not to the People in the form of the prosecution. Similar to a bail bond being in the nature of a contract between the government and the surety that ensures the appearance of the defendant (see *People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58]), an OR written agreement is a contract between the government and the defendant in which the defendant not only promises to appear, but is informed of the consequences of nonappearance.

The People contend that the flaw in *Jenkins* is made apparent when considered in light of the 1983 enactment of section 1320.5, which punishes failure to appear while released on bail. The People argue that section 1320.5 defines the offense of failure to appear while out on bail "in identical terms, language, and elements, as the offense of failure to appear while released on own recognizance. However, prosecution of failure to appear while released on bail is not, and has never been, associated with contractual guarantees of the type specified in . . . section 1318."

■ Initially, we are not certain what the People mean by "contractual guarantees." If the People mean that without the evidence of a written contract between the government and a defendant a prosecution for failure to appear while out on OR will not lie, they are correct. However, this does not mean as the People assert "automatic application of *Jenkins* to the present statutory framework would lead to absurd results. One class of offender (those released on their own recognizance) would be entitled to a defense that the other class (those released on bail) would not have, even though the offenses and their elements are nearly identical." In order to prove that a defendant failed to appear while out on bail, there must be proof that the defendant was actually out on bail. (§ 1320.5.)

Further, a defendant released from custody without the written agreement specified in section 1318 is not a defendant released on his or her own recognizance. In other words, as noted, "a release without bail which does not comply with the specific requirements of section 1318 is not a release 'under an own recognizance.' " (*Jenkins*, *supra*, 146 Cal.App.3d at p. 27.)

The People do not make any argument that substantial compliance with section 1318 can excuse literal compliance. However, because the trial court assumed that substantial compliance with section 1318 was acceptable we turn to that issue.

First, we point out that the *Jenkins* court's discussion of substantial compliance is dicta. Second, the *Jenkins* court noted "a policy of accepting proof of substantial compliance in lieu of literal compliance . . . has little to recommend it. Literal compliance with section 1318 is easily achievable and simple to prove while resolution of recurring issues of substantial compliance would cast a significant burden on the judicial system." (*Jenkins, supra,* 146 Cal.App.3d at p. 26, fn. 3.) Third, in *Jenkins,* the defendant signed a written agreement that contained at least some of the promises required by section 1318. The only thing missing was the defendant's acknowledgement that he had been informed of the consequences and penalties of his failure to appear. (146 Cal.App.3d at pp. 24, 26.)

■    As the *Jenkins* court noted, "Section 1318 became operative on January 1, 1981. [Citation.] It replaced section 1318.4 [citation] and added the requirement that a 'defendant shall not be released from custody under an own recognizance' until he files a signed release agreement which includes an acknowledgement that he 'has been informed of the consequences and penalties applicable to violation of the conditions of release.' " (*Jenkins, supra,* 146 Cal.App.3d at p. 25.) "An amendment to a statute making a material change in its wording bespeaks a legislative intent to change the meaning of the prior statute." (*Jordan v. Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 48 [130 Cal.Rptr. 446].) Here, the Legislature made a material change in the statute.[9] The legislative intent was to go beyond the original statutory requirements of OR release and require a much more specific and detailed form of written agreement for such release, that is, a written agreement in which the defendant not only promised to appear, but also acknowledged that he or she had been informed of the consequences and penalties applicable to violation of conditions of release. (§ 1318, subd. (a)(5).) The written agreement of the defendant is not simply an agreement to show up in court; it serves as notice that the defendant understands and acknowledges that he or she is out on OR and what that means in terms of violating the agreement.

■    Fourth, the judicially created doctrine of substantial compliance is not available in this situation because the contract or agreement into which a defendant must enter to obtain OR release is analogous to a unilateral

---

[9] Former section 1318.4 read: "To be released on his own recognizance the defendant shall file with the clerk of the court in which the magistrate or judge is presiding an agreement in writing duly executed by him, in which he agrees that: [¶] (a) He will appear at all times and places as ordered by the court or magistrate releasing him and as ordered by any court in which, or any magistrate before whom, the charge is subsequently pending. [¶] (b) If he fails to so appear and is apprehended outside of the State of California, he waives extradition. [¶] (c) Any court or magistrate of competent jurisdiction may revoke the order of release and either return him to custody or require that he give bail or other assurance of his appearance as elsewhere provided by this chapter."

contract.[10] "A unilateral contract is one in which a promise is given in exchange for some act, forbearance or thing; there is only one promisor." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 105, p. 148.) Thus, in this situation, the court releases the defendant from custody if and when the defendant performs (signs the written agreement pursuant to section 1318), but the court has no right to compel the defendant's performance. Furthermore, even if the defendant performs, the court is not under any obligation to release the defendant on OR. The court could choose to release the defendant on bail instead.[11]

Finally, if we were to allow substantial compliance with section 1318, again, we would be condoning the lower court's disregard for a legislative enactment. Furthermore, we reiterate, "Literal compliance with section 1318 is easily achievable and simple to prove while resolution of recurring issues of substantial compliance would cast a significant burden on the judicial system." (*Jenkins, supra,* 146 Cal.App.3d at p. 26, fn. 3.)

In conclusion, because there was no evidence in this case of a written agreement conforming to section 1318 produced at trial, there was insufficient evidence to convict appellant of willful failure to appear while out on OR. Accordingly, we reverse the judgment. Principles of double jeopardy preclude the People from retrying defendant. (*Burks v. United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 98 S.Ct. 2141].)

---

[10] The doctrine of substantial performance/compliance applies only to bilateral contracts. (15 Williston on Contracts (4th ed. 2000) Doctrine of Substantial Performance, § 44:52, p. 217.) "[C]ourts have found substantial compliance when 'a clerk merely failed to timely stamp an order for a new trial,' and when there were 'harmless misstatements in a form contract.' [Citation.] Courts have . . . applied the substantial compliance doctrine to the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.), to allow a contractor to recover for work performed when, for instance, its 'license expired before completion of a project,' or 'following a change in the form of the contractor's business, the entity performing the contract was slightly different from the entity named on the contract.' (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 283 [211 Cal.Rptr. 703, 696 P.2d 95].) [¶] Courts have held the substantial compliance doctrine is inapplicable when statutory notice requirements, including the time within which notice must be given, are not met. (*Smith v. Board of Supervisors* [(1989)] 216 Cal.App.3d [862,] 876 [265 Cal.Rptr. 466]; *Ibarra v. City of Carson* (1989) 214 Cal.App.3d 90, 99 [262 Cal.Rptr. 485].)" (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 384–385 [17 Cal.Rptr.3d 39].)

[11] "Article I, section 12, of the California Constitution establishes a person's right to obtain release on bail from pretrial custody, identifies certain categories of crime in which such bail is unavailable, prohibits the imposition of excessive bail as to other crimes, sets forth the factors a court shall take into consideration in fixing the amount of the required bail, and recognizes that a person 'may be released on his or her own recognizance *in the court's discretion.*' " (*In re York* (1995) 9 Cal.4th 1133, 1139–1140 [40 Cal.Rptr.2d 308, 892 P.2d 804], italics added.)

Since the judgment must be reversed, it is not necessary to address appellant's remaining contentions. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 661 [126 Cal.Rptr.2d 876] [reversal for insufficient evidence renders remaining contentions "moot"].)

## *Disposition*

The judgment is reversed.

Rushing, P. J., and Premo, J., concurred.