[No. F055430. Fifth Dist. Sept. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO HERNANDEZ, Defendant and Appellant.

## COUNSEL

Jagdish J. Bijlani, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Leanne LeMon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KANE, J.—Prior to sentencing on a 2004 felony conviction, appellant Alberto Hernandez, also known as Ubaldo Hernandez Araiza, was temporarily released from custody by the trial court to allow him to visit his ailing wife on the condition that he return to court for sentencing the following week. Appellant did not return. He was later arrested in 2007 on a new felony charge of receiving stolen property. The criminal complaint against appellant included an alleged enhancement under Penal Code section 12022.1, subdivision (b),[1] on the ground that the crime of receiving stolen property was committed while appellant was released from custody on his own recognizance. Appellant was found guilty as charged and the subject enhancement was found true. Appellant appeals, contending the trial court erred in finding the enhancement true because there was no evidence that he was released on his own recognizance as that term is defined under applicable law. We agree and accordingly vacate the section 12022.1, subdivision (b), enhancement.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## FACTS AND PROCEDURAL HISTORY

On October 27, 2004, in Merced County Superior Court, appellant was charged in an information alleging the following counts: (1) unlawful transportation of a controlled substance (methamphetamine) in violation of Health and Safety Code section 11379, a felony; (2) unlawful possession for sale of a controlled substance (methamphetamine) in violation of Health and Safety Code section 11378, a felony; (3) making criminal threats in violation of section 422; and (4) resisting arrest in violation of section 148, subdivision (a). On December 14, 2004, appellant entered pleas of no contest to counts 1, 3 and 4 with the understanding that he would serve no more than one year in the county jail.

On January 18, 2005, appellant was released from custody on what the trial court referred to as an emergency pass. The release was granted on the condition that appellant obey all laws and return for sentencing on January 25, 2005. Appellant orally promised that he would do so. The sole purpose of the release was to allow appellant to visit his wife, who was going through a serious medical crisis.

In 2007, appellant was arrested after he was found with stolen checkbooks, bank cards and other stolen property in his possession. The criminal complaint accused appellant of receiving stolen property in violation of section 496, subdivision (a), a felony. It also alleged as an enhancement that appellant committed the crime while released from custody on bail or on his own recognizance within the meaning of section 12022.1, subdivision (b). The jury found appellant guilty of the felony charge. As to the enhancement, the trial court found that it was true because appellant "was arrested for the crime charged . . . while he was released from custody on his own recognizance on a pass [in the 2004 case]." Appellant was sentenced on May 8, 2008. As a result of the trial court's application of the section 12022.1 enhancement, appellant's total prison sentence was increased by two years. Appellant appealed.

## DISCUSSION

Appellant contends the evidence was insufficient to support a finding that he committed a felony while released from custody on his *own recognizance* (or O.R.) within the meaning of section 12022.1. He argues that the trial court's grant of an emergency pass was not the equivalent of an O.R. release because it served a purpose other than ensuring appellant's return to court and, furthermore, appellant did not execute a written release agreement in accordance with section 1318. Respondent contends that the emergency pass granted by the trial court was in substance an O.R. release or the functional

equivalent thereof, and therefore section 12022.1 was applicable. These claims require us to consider what the Legislature intended by use of the term "own recognizance" in section 12022.1.

## I. *Standard of Review*

In addressing questions of statutory interpretation and application, we apply a de novo review. "The proper interpretation of a statute is a question of law for our independent determination. [Citations.] Likewise, the application of a statute to undisputed facts is a question of law, subject to our de novo, or independent, review on appeal. [Citations.]" (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311 [83 Cal.Rptr.3d 561].) To the extent appellant's appeal challenges the trial court's determination of any disputed factual issue, we review the sufficiency of the evidence based on the familiar substantial evidence test. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1125 [12 Cal.Rptr.3d 592, 88 P.3d 498].)

## II. *Emergency Pass Was Not O.R. Release for Purposes of Section 12022.1*

The particular issue before us is whether the trial court's emergency pass allowing appellant to visit his ailing wife comes within the intended scope of the phrase "released from custody . . . on his . . . own recognizance" for purposes of the section 12022.1 enhancement. (See § 12022.1, subd. (a)(1).)

▪ To set the stage, we begin with a few preliminary observations about this form of release from custody. An O.R. release may be granted in the trial court's discretion whenever a defendant could permissibly be released on bail. (§ 1270; Cal. Const., art. I, § 12.) Thus, an O.R. release is simply an alternative to bail in appropriate cases. (*In re Smiley* (1967) 66 Cal.2d 606, 613 [58 Cal.Rptr. 579, 427 P.2d 179].) A defendant seeking release from custody in the trial court "typically has two options: post bail and obtain release, or seek the privilege of OR release." (*In re York* (1995) 9 Cal.4th 1133, 1141 [40 Cal.Rptr.2d 308, 892 P.2d 804].) As in the case of bail, "the 'primary purpose' of the [O.R.] device 'is practical assurance that [the defendant] will attend upon the court when his presence is required.' " (*In re Smiley, supra*, at p. 613.)

▪ A defendant who seeks the privilege of an O.R. release must submit a signed release agreement that includes, among other things, certain express promises such as a promise to appear in court when required and a promise to

abide by other reasonable conditions imposed by the court.[2] (§ 1318.) Before a defendant may be released from custody by the trial court on an O.R. release, the requirements of section 1318 must be met. (§ 1318, subd. (a).) If a defendant is released without a signed release agreement that complies with section 1318, the defendant cannot be separately punished under section 1320 for his subsequent failure to appear. (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927–931 [76 Cal.Rptr.3d 372] (*Mohammed*); *People v. Jenkins* (1983) 146 Cal.App.3d 22, 27 [193 Cal.Rptr. 854] (*Jenkins*) [the defendant's release by the superior court pursuant to an agreement that did not comply with § 1318 "was not on his own recognizance within the contemplation of section 1320, subdivision (b)"].)

■ With this background in mind, we now turn to our consideration of section 12022.1. Our analysis of the statute is guided by well-established rules. "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ Section 12022.1 provides that a two-year enhancement shall be added to a defendant's sentence if he or she commits a second felony offense while "*released from custody*" on a primary offense." (§ 12022.1, subd. (b), italics added.) However, the term "primary offense" is specifically defined as "a felony offense for which a person has been released from custody *on bail or*

---

[2] Section 1318 provides as follows:

"(a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement which includes:

"(1) The defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending.

"(2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate.

"(3) The defendant's promise not to depart this state without leave of the court.

"(4) Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California.

"(5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release."

*on his or her own recognizance* prior to the judgment becoming final, including the disposition of any appeal, or for which release on bail or his or her own recognizance has been revoked." (§ 12022.1, subd. (a), italics added.) Thus, section 12022.1 clearly permits the imposition of a two-year enhancement "if one commits a felony while released on bail or O.R. pending final resolution of an earlier felony charge . . . ." (*In re Jovan B.* (1993) 6 Cal.4th 801, 808–809 [25 Cal.Rptr.2d 428, 863 P.2d 673].)

■ The legislative purpose of section 12022.1 is to punish *recidivist* conduct with increased punishment. (*People v. McClanahan* (1992) 3 Cal.4th 860, 867–868 [12 Cal.Rptr.2d 719, 838 P.2d 241].) In particular, the "bail/O.R." enhancement was intended " ' " 'to meet public concern over offenders who are *arrested* [and] then allowed back on the street a short time later to commit more crimes,' " ' ' "to deter the commission of new felonies by persons *released from custody* on an earlier felony," ' and to recognize such an offender's ' "*breach* of the terms of his *special custodial status* . . . ." ' " [Citation.]" (*In re Jovan B., supra,* 6 Cal.4th at p. 813.) In other words, the design of the law is to punish a particular form of recidivism—namely, that of a defendant who is released from custody on bail or on an O.R. release in a pending felony case and who seizes the opportunity of his release to commit another felony.

We note that at least two key cases have interpreted the scope and applicability of section 12022.1 in other contexts. We now consider those two cases that are the principal authorities on which the parties rely in urging their respective positions.

In the case of *In re Jovan B., supra,* 6 Cal.4th 801, our Supreme Court concluded that section 12022.1 applied to a " 'home supervision' " release from custody in a juvenile proceeding, which was deemed to be the "functional equivalent" of an adult O.R. release. (*In re Jovan B., supra,* at p. 815.) The court noted that when a juvenile court orders such a release of a minor to his or her parents, "[t]he order may impose, modify, or extend conditions 'on [the] . . . *minor*' (italics added), who must *personally* sign a written promise to obey." (*Ibid.*) The court then explained why a home supervision release in the juvenile court setting was the functional equivalent of an O.R. release in the adult setting: "Like adult O.R. release . . . , a juvenile's conditional 'home supervision' release places substantial responsibility, faith, and trust in the released person himself. Though the decision to release a juvenile relies in part on the assumption that parents, guardians, or relatives will monitor his conduct, his defiant commission of a new felony while released on this 'special custodial status' is a *personal* breach of the juvenile court's trust. It is exactly the kind of opportunistic recidivism which warrants enhanced punishment under . . . Penal Code [section] 12022.1. We conclude that by

committing a new felony while subject to 'house arrest' release on an earlier charge, the minor brought himself within the terms of the bail/O.R. enhancement." (*Ibid.*)

In the case of *People v. Ormiston* (2003) 105 Cal.App.4th 676 [129 Cal.Rptr.2d 567], the Court of Appeal distinguished a diversion program under section 1000 from a release on one's own recognizance under section 12022.1. The court observed, "The legal effect of diversion is . . . not the release of the defendant, but instead the suspension of criminal proceedings while the diversion program continues." (*People v. Ormiston, supra*, at p. 690.) The court further noted that diversion serves an entirely different purpose than that of an O.R. release. For example, an O.R. release is intended as a device to ensure subsequent court appearances and the trial court may impose any reasonable conditions related thereto. In contrast, the diversion statutes create special proceedings similar in purpose and effect to *probation* and prescribe particular terms and conditions that are related to the successful completion of drug treatment. (*Id.* at pp. 690–691.) The court concluded that section 12022.1 was not applicable because a diversion under section 1000 was not tantamount to an O.R. release, explaining as follows: "Diversion . . . does not constitute a special custodial status or other form of release of the defendant with a promise to appear at further proceedings, but rather a guilty plea and resolution of the case in the nature of ' "a specialized form of probation . . ." ' for a particular class of defendants. [Citations.] We therefore conclude that for purposes of section 12022.1, an order of diversion under the deferred judgment statutes is neither a 'release' on bail or OR nor the functional equivalent of it, and the enhancement findings are not supported by the evidence." (*People v. Ormiston, supra*, at p. 692, fn. omitted.)

Relying on the language used in *In re Jovan B., supra*, 6 Cal.4th 801, respondent argues that the emergency pass granted by the trial court in this case was the "functional equivalent" of an O.R. release, and therefore section 12022.1 was applicable. Appellant responds, based on *People v. Ormiston, supra*, 105 Cal.App.4th 676, that not all forms of release without bail are in the category of an O.R. release. He claims the emergency pass granted to him was not an O.R. release because the primary purpose of the pass was to allow him to visit his wife and not to ensure his appearance in court. Appellant also contends that since he never signed a formal written release agreement pursuant to section 1318, the emergency pass was *not* an O.R. release or its functional equivalent. We conclude that appellant prevails on this issue because his release from custody failed to meet the statutory criteria set forth in section 1318 for an O.R. release.

■ We are so persuaded based on Court of Appeal cases addressing the issue of whether section 1318 must be complied with in order to prosecute a

defendant for the separate offense set forth in section 1320 of failure to appear in court after being released on his or her own recognizance. (See *Mohammed, supra,* 162 Cal.App.4th 920; *Jenkins, supra,* 146 Cal.App.3d 22.) Both of these cases held that if section 1318 is not complied with, there can be no prosecution of the defendant under section 1320 if he or she fails to appear as promised. An important rationale in both decisions was that compliance with section 1318 is an integral and necessary part of what defines an O.R. release. (*Mohammed, supra,* at pp. 930–932; *Jenkins, supra,* at pp. 26–28.) As expressed by Justice Puglia in *Jenkins*: "[Section 1318] expressly defines and delimits the conditions of release under an own recognizance. The People do not suggest that the courts may ignore the statutory command and devise their own criteria for release on an own recognizance and we are satisfied that they may not. However else it might be characterized, a release without bail which does not comply with the specific requirements of section 1318 is not a release 'under an own recognizance.' " (*Jenkins, supra,* at p. 27.) The *Mohammed* court agreed with that analysis, stating: "[A] defendant released from custody without the written agreement specified in section 1318 is not a defendant released on his or her own recognizance." (*Mohammed, supra,* at p. 931.)

■ We concur with *Mohammed* and *Jenkins* that the Legislature intended to make compliance with section 1318, including the necessity of a signed release agreement containing the required stipulations, an essential part of what constitutes an O.R. release. Although these cases were addressing the meaning of an O.R. release for purposes of prosecution under section 1320 and here we are dealing with an enhancement under section 12022.1, each section similarly refers to a defendant's *O.R. release* as a basis for its application. A defendant may obtain an O.R. release *only if* the requirements of section 1318 are met. (*In re York, supra,* 9 Cal.4th at p. 1141.) It follows that if the requirements of section 1318 are not satisfied and the defendant is nonetheless released, that release is not an O.R. release as defined by the Legislature and hence cannot be the basis for prosecution under sections 1320 or 12022.1, subdivision (b). It is reasonable to conclude, and we do so here, that the Legislature intended the statutory criteria for an O.R. release to apply in a consistent manner when used in these related sections of the Penal Code. (See § 1270, subd. (b) [expressly applying § 1318 to exercise of a trial court's discretion to grant an O.R. release].)

Further, the "functional equivalent" language employed in *In re Jovan B., supra,* 6 Cal.4th at page 815, does not conflict with the conclusions expressed herein. The Supreme Court in that case was addressing the unique issue of whether provisions for a minor's home release were, within the distinct statutory framework applicable to minors in the juvenile courts, the functional equivalent of an *adult* O.R. release. (*Ibid.*) We do not believe the Supreme Court was suggesting that in the *adult* system, which includes the criteria of

section 1318, a functional equivalent test should be applied to determine whether a release is an O.R. release.

■ In the present case, it is undisputed that section 1318 was not complied with in connection with appellant's release from custody. No written release agreement was ever signed by appellant as required by section 1318. Accordingly, we conclude that appellant did not commit a new felony while on an O.R. release. Since appellant's release did not qualify as an O.R. release under applicable law, the enhancement findings under section 12022.1 were not supported by the evidence and must be reversed.

## DISPOSITION

The trial court's findings on the section 12022.1 enhancement are reversed and the two-year enhancement is stricken from appellant's sentence. In all other respects, the judgment is affirmed.

Cornell, Acting P. J., and Hill, J., concurred.