Justice LEE,
dissenting:
55 I agree with the court's construction of the Post-Convietion Remedies Act, and concur in its determination that Gressman's claims are not subject to survival under that statute. I respectfully disagree with its construction of the general survival statute, however. I read that provision, Utah Code seetion 78B-3-107(1)(a), to apply only to claims for "personal injury to a person" in the sense of physical injury to a plaintiff's body. That is the only construction that ascribes independent meaning to the qualifying language, "to a person." It is accordingly the one I would attribute to the legislature. And since Gressman's claim is not of that nature, I would conclude that the claim abated on his death.
156 I agree that false imprisonment and malicious prosecution are "the closest common law analogs" to Gressman's statutory factual innocence claim. Supra 124. And I acknowledge that those claims "are categorized as torts against the person (as opposed to torts against property)" at common law. Supra 125. But that is not the question *1013 before us. The scope of our general survival statute is not dictated by the treatment of these common law claims under the law of other states, or in federal caselaw on the appropriate limitations period for § 1983 claims. See supra 11 26-28 (noting that such claims are categorized as personal injury claims in various state decisions and in federal cases analyzing the applicable limitations period for claims under 42 U.S.C. § 1983).
157 The seope of our statute, rather, is dictated by its terms-which provide for survival not for "personal injury" claims, or for claims for injury "to the person," but for "[al cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of another." Urax Cope § T8B-~8-107(1)(a). And that language, read holistically and not subdivided artificially, should properly be read to modify or limit the range of "personal injury" claims subject to survival.
1 58 The majority seeks to parse the component terms of the statute-"personal injury" and "to a person"-and to piece them together additively in a manner depriving the terms of independent meaning. It reasons as follows: "Because common law analogs to a factual innocence claim under the PCRA are commonly included in the definition of actions for 'personal injury' or 'injury to the person' under survival statutes, and because a similar federal statutory claim has been defined as a personal injury action for the purposes of statutes of limitations, Mr. Gressman's statutory claim survives because it is an action for 'personal injury to a person.'" Supra 128 (emphasis added). But the court's conclusion does not follow from its premises. The cited "common law analogs" may well be defined in various states as "actions for personal injury" and in others as actions involving "injury to the person." See supra 1 26. But it does not at all follow that such common law claims are actions "arising out of personal injury to a person" under our statute. That is the full-flowered statutory phrase-a phrase not implicated in any of the cases cited by the majority-and the meaning of that phrase cannot properly be equated with its individual component parts. See State v. Canton, 2013 UT 44, ¶ 25, 308 P.3d 517 (explaining the need to move "beyond the component terms" of a statute to consider the "full [statutory] phrase in its entirety" (citing FCC v. AT & T, Inc., - U.S. -, 131 S.Ct. 1177, 1183, 179 L.Ed.2d 132 (2011) (noting that "two words together may assume a more particular meaning than those words in isolation"))).
159 For me the key to interpreting the statute is the time-worn canon of independent meaning, or its corollary presumption against surplusage. See Rapela v. Green (In re Estate of Kampros), 2012 UT 57, ¶ 19, 289 P.3d 428 (noting our presumption that the legislature uses "each word advisedly" and against a construction rendering any part "inoperative or superfluous, void or insignificant'"). By themselves, the individual references to "personal injury" or injury "to a person" could be construed in either a narrow or broad sense. See Allred v. Solarey, Inc., 971 F.Supp. 1394, 1397 (D.Utah 1997). These terms could be understood to be limited to physical harm or injury to a person (as by a cut, bruise, or broken bone),[1] or they could be read more broadly to encompass all injuries that are "personal" in nature (as opposed to harm to property).[2]
*1014 T 60 But in the context of the full statutory phrase, the narrow reading is the better one. Our statute does not speak in the broad terms of the common law; it does not provide for survival, for example, of all tort claims for harms in the nature of "personal injury." Instead it adds to that phraseology by avoiding abatement for claims arising from "personal injury to a person." UTAH Cope § 78B-3-107(1)(a) (emphasis added). The addition seems purposeful, particularly as compared to the common-law formulation. And the addition must be understood to add something.
T61 In context, we should read the meaningful addition ("to a person") as narrowing. We should read it, in other words, as focusing the sub-class of claims saved from common-law abatement to those involving physical harm to a claimant's "person." See Allred, 971 F.Supp. at 1398 (concluding, in interpreting this provision, that "Itlhe noun 'person' indicates a natural body ... and the injuries contemplated are injuries to that body").
1 62 The majority rejects this conclusion in light of the "history and context of the adoption of the current version of the survival statute." Supra 180. It notes that before the current language was adopted in 1991, the statute "provided for the survival of actions 'arising out of physical injury to the person'" Supra ¶ 30 (quoting Utax Cope § 78-11-12 (1987)) (emphasis in original). And because the court views the 1991 amendment as "substantive" and " 'material," it divines an "intent" by the legislature to "expand the types of actions that would survive" to extend beyond "physical injury." Supra ¶¶ 30-31. Citing Am.Jur.2d Statutes § 214, n. 3 (2012), the court concludes that " '[aln amendment to a statute making a material change bespeaks a legislative intent to change the meaning of the statute.'" Supra ¶ 30.
T 63 That conclusion is tautologically true but analytically unhelpful. It is hard to argue with the proposition that a "material change bespeaks a legislative intent to change the meaning of the statute." Id. But that proposition begs the key question, which is whether the change under review is in fact material. Some legislative amendments are not. Some are aimed only at clarification, or at stylistic or semantic refinement. See, e.g., Rahofy v. Steadman, 2012 UT 70, ¶ 12 n. 12, 289 P.3d 534 ("stylistic changes" made in legislative amendments had "no substantive effect on our analysis"). And those kinds of changes are deemed not to "bespeak a legislative intent to change the meaning of the statute." See Am.Jur2b Statutes § 214, n. 8 (2012) (noting a caveat for a "clarifying" amendment). So the question is whether the 1991 amendment was a material one or a mere clarification.
" 64 I view it in the latter sense. And my conclusion is no mere assumption. Supra £380 (challenging my approach as "nul-liflying] the legislature's amendment" and "improperly assum[ing] this substantive change was an idle act"). It is based on the terms and context of the 1991 amendment. That amendment's title is telling. It is "AN ACT RELATING TO JUDICIAL ACTIONS; AMENDING THE DEFINITION OF HEIR AND A REFERENCE TO INJURY AS APPLICABLE TO RECOVERY IN WRONGFUL DEATH ACTIONS; AND MAKING TECHNICAL CORRECTIONS." 1991 UTaxg Laws 401. Thus, the amendment expressly encompassed changes the legislature specifically flagged as "technical corrections." And the change in question-replacing "physical injury" with "personal injury"-falls clearly in that category, as it has nothing to do with the other amendments (to provisions other than the survival statute [3]) designated as more material.
*1015 165 Moreover, the full range of changes made to the survival statute in 1991 are, on their face, obviously technical (non-material) alterations. The changes in question were these:
()(@) Causes of action arising out of H[pbysieal] personal injury to the person or deathH{[;] caused by the wrongful act or negligence of another A[-skalll do not abate upon the death of the wrongdoer or the injured person [ ].{[-and-thel. The injured person or the personal representatives or heirs {the-person[one-meeting death,-as-above-stated,-shalll the person who died have a cause of action against the wrongdoer wrongdoer for special and general damagesf],[-However,-if], subject to Subsection (1)(b).
1991 UTax Laws 401. Thus, the only other changes to this provision were to delete a comma; to replace "shall" with "do"; to break the provision into separate sentences and sub-sections; and to replace "one meeting death, as above stated" with "the person who died."
T66 None of these changes can conceivably be deemed to "bespeak[] a legislative intent to change the meaning of the statute." Supra 130. For me this confirms what is already apparent in the title of the amendment-that the changes to the survival statute (one of several provisions being altered by the 1991 amendment) are mere "technical corrections," not material alterations.[4]
167 I therefore see no basis for reading the 1991 amendment to the survival statute to "evidence{[ ] an intent to expand the types of actions that would survive" a claimant's death. Supra 181. The definition of "personal injury" in the government immunity act, cited by the majority, supra 132 (citing Utax Cop® § 63-30-2(6) (1989)), seems quite unhelpful. As noted above, the quoted term may carry different meanings in different contexts, and in any event the operative term in the survival statute is not "personal injury" but "personal injury to a person," UTAH Cope § 78B-8-107(1)(a). That phrase cannot properly be interpreted to invoke a definition of a different phrase in a different statute. And the definition of that different phrase in that different statute cannot reasonably be deemed to "indicate[ ] that [the legislature] intended to alter the meaning of the survival statute when it changed (physical injury' to 'personal injury." " Supra ¶ 32.
T 68 The majority's only other ground for its construction is the assertion that, "(lf anything, the repetition of the root word 'person' in the phrase 'personal injury to a person'" emphasizes a legislative intent to include "all personal tort claims in the survival statute." Supra 188. But that is just a rejection of the canon of independent meaning, cloaked in the court's assurance as to the legislature's real intent. That is insufficient. We should give the operative canon-the presumption against surplusage-its usual effect. The presumption is certainly rebutta-ble, but the rebuttal must be found in something more than the court's take-our-word-for-it assurance of legislative intent.
{69 A multi-member, bi-partisan body of legislators has no discoverable infent-ex-cept to enact the terms of its legislative work-product. - Legislators work collaboratively-sometimes - combatively-toward a statute representing a majority of votes and, inevitably, a compromise, We cannot possibly discern the body's collective intent in arriving at that compromise. There is no such thing.[5] Instead, the reality reflects a *1016 range of intentions among a patchwork of legislative factions-of those who preferred a stronger bill, of others who wanted a weaker one (or none at all), and perhaps of some who had a different goal altogether (through logrolling) or even no sense of the matter at all (due to apathy).
I 70 We ignore the nuances of this process when we claim to know the real intentions of the legislature. And we upset the compromise inherent in legislation when we attribute an intention to do something other than to enact the text of a statute.[6]
(71 I see no basis for an inference of the legislature's intent to include "all personal tort claims in the survival statute." Supra 38. The only intent that I have the capacity to discern is in the text of the statute. And that text appears to me to provide for survival of only a subset of "personal injury" claims-of those involving injury "to a person" in the sense of physical injury.
I 72 Only that reading gives effect to each term of the statute. The court's broader construction focuses myopically on "personal injury" without regard to the qualifying phrase "to a person"-openly "conflat[{ing] these two phrases." Supra 138. Thus, it is the majority's reading that would and render "idle" the legislature's pronouncement. See supro 130. The legislature did not amend the statute simply to save "personal injury" actions; it amended it to save actions arising out of "personal injury to a person." I would reject the majority's construction and embrace mine on the ground that only mine preserves independent meaning for both clauses.[7]
173 I would accordingly affirm the dismissal of Gressman's PCRA claim. That claim is not for physical injury to a person. It is a claim for "personal infury" (not injury to property), but not for "personal injury to a person," as it does not seek compensation for any physical harm to a claimant's body[8] I would therefore hold that Gressman's claim abated on his death, and affirm on that ground.

. See Buack's Law Dictionary 857 (9th ed.2009) (defining "personal injury" as "[iJn a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury"); see also 1 Am Jur.2p Abatement, Survival, & Revival § 71 ("[The words 'damage to the person' may not extend to torts affecting only feelings or reputation, such as breach of promise, slander, or malicious prosecution, but include only actions resulting from damage of a physical character.").
The majority dismisses this definition on the ground that it is somehow "confined to negligence actions, while Utah's survival statute includes both intentional torts and negligence." Supra 129, n. 7. That is not the sense of the above-cited definitions as I understand them. The Black's definition merely indicates that the definition typically is applicable in a negligence action; it does not foreclose the possibility of this sense of the term in strict liability. And as the Am.Jur. cite suggests, courts and commentators have adopted this notion outside the context of negligence.

. See Buack's Law Dictionary 857 (Ith ed.2009) (defining "personal injury" as "[aluy invasion of a personal right, including mental suffering and false imprisonment"); Ura Cope § 63G-7-102(6) (stating that "Personal Injury" for pur *1014 poses of Utah's Government Immunity Act "means an injury of any kind other than property damage").

. The provisions altered by the 1991 amendment included not just the survival statute but also substantial amendments to the definition of "heir" under Urax Cope § 78-1 1-6.5. 1991 Uran Laws 401 (also amending, among other things, the general definition of "heir" as it applied to the rights of an heir or personal representative to sue and be sued and to successive actions on the same contract).

. The cases cited in the Am.Jur. reference cited by the majority, People v. Mohammed, 162 Cal.App.4th 920, 932, 76 Cal.Rptr.3d 372 (6th Dist.2008); Bigelow Group, Inc. v. Rickert, 377 Ill.App.3d 165, 315 Ill.Dec. 842, 877 N.E.2d 1171 (2007), are distinguishable. See Am.Jur. 2d Statutes § 214, n. 3 (2012) (citing these cases for the proposition that a "material change bespeaks a legislative intent to change the meaning of the statute"). They involved statutory amendments that are so obviously substantive and material that no one could conceivably read them as making mere technical corrections or stylistic changes. See Mohammed, 162 Cal.App.4th at 932, 76 Cal.Rptr.3d 372 (statute amended to add new requirement that a defendant released from custody on his own recognizance must file a signed release agreement); Bigelow Group, 315 Ill.Dec. 842, 877 N.E.2d at 1175 (tax statute amended from "the collector shall receive taxes on part of any property ...", to "the collector may receive taxes on part of any property ...").

, See Rosert E. Keeton, Keeton on Juboinc N THE American Lzcar System 207, 210-11 (1999) ("[Llegislative intent ... is a legal fiction. Only *1016 a natural person can have a state of mind such as intent. No legal entity such as a legislature can have an "intent" in a strictly factual sense."); Charles Fried, Sonnet LXV and the "Black Ink" of the Framers' Intention, 100 Harv. L.Rev. 751, 759 (1987) ("[WJords and text are chosen to embody intentions and thus replace inquiries into subjective mental states. In short, the text is the intention of the authors or of the framers.") (emphasis in original); Joun Currman Grav, THE Nature anp Sources or tue Law 170 (2d ed. 1921) ("[The psychic transference of the thought of an artificial body must stagger the most advanced of ghost hunters").

. See Frank H. Easterbrook, What Does Legislative History Tell Us ?, 66 Cui-Kent L.Rev. 441, 446-47 (1990) ("Statutes are drafted by multiple persons, often with conflicting objectives. There will not be a single objective, and discretionary interpretation favors some members of the winning coalition over others."); Frank H. Easter-brook, Text, History, and Structure in Statutory Interpretation, 17 Harv. J.L. & Pus Por'y 61, 68 (1994) ("Peer inside the heads of legislators and you will find a hodgepodge.").

. My approach is also in line with our precedent. Although we have not previously interpreted the statutory language, we have applied it with some regularity, and I am aware of no case where this court has employed the statute to save any claims except those involving physical injury to a person. See Meads v. Dibblee, 350 P.2d 853, 854, 857-58 (Utah 1960) (involving claims arising from the death of a woman injured in a car accident); In re Estate of Leigh, 6 Utah 2d 299, 313 P.2d 455, 455, 458 (1957) (involving claims of physical injury stemming from a car accident); Fretz v. Anderson (Fretz I), 5 Utah 2d 290, 300 P.2d 642, 645, 650-51 (1956) (same), overruled on other grounds by Fretz v. Anderson (Fretz II ), 6 Utah 2d 169, 308 P.2d 948 (1957).

. I recognize, of course, that in some contexts "the law recognizes that a person is more than a physical conglomeration of tissue and bones." Supra T 34. But that is hardly the universal legal sense of this term. The notion of "person" is among the broadest, most wide-ranging terms in the law. See Buack's Law Dictionary 1257-58 (9th ed.2009) (providing no less than 30 definitions and legal terms of art applicable to the word "person"). Surely the court does not mean to exclude the possibility that injury "to a person" may sometimes mean physical injury to a person's body. It does at least sometimes. See Allred, 971 F.Supp. at 1398; see also supra n. 1. So it is analytically unhelpful to identify counterexamples of extra-corporal notions of "person'" in the law.