Filed 1/15/14

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C067395 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F7532) |
| v. | |
| TESLA RENEE CARROLL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Shasta County, James Ruggiero, Judge. Affirmed.

Joanne M. Kirchner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.


Defendant Tesla Renee Carroll appeals following a jury trial and conviction of two counts of failing to appear in court while on "own recognizance" (OR) release. (Pen.

1

Code, § 1320, subd. (b).)[1]  Defendant argues the evidence was legally and factually insufficient, because a person is not on OR release absent an OR release agreement expressly containing all terms mandated by section 1318, and defendant's OR release agreements failed to include statutorily mandated promises "to obey all reasonable conditions imposed by the court" and "not to depart this state without leave of the court."

We conclude that the OR release agreement defendant signed here substantially complies with section 1318 and affirm.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

By an amended information, defendant was charged with two counts of failure to appear on a felony (§ 1320, subd. (b)) for her failure to appear on June 25, 2010 and September 27, 2010 on a felony charge of receiving a stolen vehicle (§ 496d).  The pleading also alleged that defendant served two prior prison terms.  (§ 667.5, subd. (b).)[3]

---

[1]  Undesignated statutory references are to the Penal Code.

  Section 1320, subdivision (b), provides:  "Every person who is charged with or convicted of the commission of a felony who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony . . . .  It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court."

[2]  Each side filed a request for judicial notice of purported legislative history.  We deny the People's November 16, 2011 request for judicial notice of a 1959 letter from a deputy county counsel in Los Angeles to the Governor concerning pending legislation assertedly introduced at the request of the county's board of supervisors.  Such a letter is not cognizable legislative history absent some indication that it was communicated to the Legislature as a whole before it voted on the bill.  (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 36, 38.)  We deny as irrelevant to this appeal defendant's January 31, 2012 request for judicial notice, as we explain in footnote 8, *post*.

[3]  Additionally, the pleading alleged two enhancements pursuant to section 12022.1 for committing an offense while on bail or OR, based on defendant's alleged violation of

2

## The Prosecution's Case

On May 19, 2010, defendant was arrested on a felony charge of receiving a stolen vehicle. (§ 496d.) She was released from the jail on OR the same day after she signed a release agreement stating in pertinent part:

"IN CONSIDERATION OF BEING RELEASED ON MY OWN RECOGNIZANCE, I **HEREBY** AGREE AS FOLLOWS:

"A. To appear on June 25th, 2010, at 0830 A.M. in [the Redding court]. [¶] And will appear at all times and places as ordered by the Court or Magistrate and as ordered by any Court in which the charge is subsequently pending; and, [¶] . . . [¶]

"B. To waive extradition if apprehended out of the State of California after failure to appear as ordered; and

"C. That any court of competent jurisdiction may revoke the order of release and return me to custody, or require that I give bail or any other assurance as provided in Part 2, Title 10 of the Penal Code.

"D. FAILURE TO APPEAR CONSTITUTES A SEPARATE AND NEW MISDEMEANOR/FELONY. PUNISHABLE FOR A FELONY BY $10,000 FINE AND/OR IMPRISONMENT IN THE STATE PRISON, OR IN THE COUNTY JAIL FOR NOT MORE THAN ONE YEAR OR BOTH. FOR A MISDEMEANOR $1,000 FINE AND/OR ONE YEAR IN JAIL.

"E. OTHER: [blank]

"I have read and understand the information given hereon and acknowledge receipt of copy hereof and certify, under penalty of perjury, that all the information is true and correct."

---

section 1320 while on OR from the original receiving a stolen vehicle charge. The court later granted the prosecution's motion to dismiss the section 12022.1 allegations.

On June 15, 2010, a felony complaint was filed, charging defendant with receiving a stolen motor vehicle in violation of section 496d.

On June 25, 2010, defendant failed to appear in court as ordered on May 19, 2010, and the court issued a bench warrant.

On August 26, 2010, defendant was arrested on the warrant. That same day, she was again released on OR after signing a second release agreement, identical to the first agreement, quoted *ante*, but with a court date of September 27, 2010 at 8:30 a.m.

On September 27, 2010, defendant failed to appear in court as ordered on August 26, 2010. She was arrested on a warrant on September 30, 2010.

The custodial officers who signed defendant's May 19 and August 26 OR release agreements testified that they explained each item on the release agreements to defendant and defendant signed the agreements, indicating she had read and understood the notices contained therein.

### The Defense Case

Defendant's fiancé, Stephen Blanchard, testified as a defense witness. He said it was his fault that defendant missed court both times. The first time, he was "having the dry heaves and passing kidney stones," with "different colored . . . mucuses coming out of my body." Defendant tried to get him to go to the hospital, but he would not go. Blanchard and defendant got to court between 2:15 and 2:45 p.m. Blanchard stayed outside. Defendant went inside, came back out, and they left. On the second scheduled date, they arrived at court around 10:30 a.m. Blanchard saw defendant speak to somebody in a jail administrative staff uniform. Blanchard did not hear what was said. Defendant and Blanchard then left the courthouse. They returned to the courthouse that afternoon, around 3:20 p.m. Blanchard stayed outside. Defendant went inside and came out 20 minutes later. Blanchard testified neither he nor defendant had access to a wireless telephone, because their phones "were stolen by the mission." Blanchard admitted he is a convicted felon.

4

## Verdict and Sentencing

The jury found defendant guilty on both counts of failure to appear. In a bench trial, the trial court found true the prior prison commitment allegations as to both counts.

The trial court subsequently sentenced defendant to the midterm of two years on count 1, a concurrent term of two years on count 2, and one year each for the two prior prison term enhancements under section 667.5, subdivision (b).

## DISCUSSION

Defendant says she is making claims of legal and factual insufficiency of the evidence. She argues the evidence is factually insufficient to show failure to appear while on OR release, because "own recognizance" requires literal compliance with section 1318 and, in a footnote, she argues that "the evidence [was] factually insufficient because the jury was not instructed to determine whether [defendant's] release agreements satisfied section 1318." She further contends in the footnote that the evidence is legally insufficient because the trial court should not have submitted the case to the jury after determining the agreements did not satisfy section 1318.

The instruction conference was held off the record and not later memorialized on the record. Consequently, the record is silent on the genesis of the court's instruction on section 1320.[4] And defendant fails to show that prior to trial she moved the court to

---

[4] No pattern instruction is provided for section 1320 prosecutions in CALCRIM or CALJIC. The trial court instructed the jury as follows:

"Defendant is accused in Counts 1 and 2 with failure to appear after release upon own recognizance in violation of Penal Code section 1320(b). [¶] In order to prove Defendant guilty of these crimes, each of the following elements must be proved: [¶] (1) Defendant was charged with the commission of a felony; [¶] (2) Defendant was released from custody on her own recognizance; AND [¶] (3) And [*sic*] the defendant willfully failed to appear as required, with the specific intent to evade the process of the court. [¶] If you conclude beyond a reasonable doubt that the People have proven that Defendant willfully failed to appear within 14 days of the date assigned for her appearance, you

5

dismiss under section 995 on the ground that she was not on OR release or moved for a judgment of acquittal under section 1118.1 on that ground during her trial. The People do not argue that defendant has forfeited her contentions. Rather, the People say this appeal presents questions of law regarding statutory interpretation, which should be addressed on appeal.

" 'It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal . . . .' [Citation.]" (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 667 (*Cal-Air*).)

The issues we decide in this appeal are (1) whether substantial compliance with the section 1318 terms can suffice for a section 1320 prosecution, and, if so, (2) whether as a matter of law the agreements here omitting terms immaterial to the section 1320 prosecution substantially complied with section 1318.[5]

---

may, but are not required to, infer that Defendant specifically intended to evade the process of the court."

[5] Defendant referenced the due process clause in a heading in her opening brief, but presented no constitutional analysis or authority other than saying a conviction based on insufficient evidence violates due process. We need not consider this argument. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 ["To the extent defendant perfunctorily asserts other claims, without development and, indeed, without a clear indication that they are intended to be discrete contentions, they are not properly made, and are rejected on that basis"].) For the same reason, we need not address defendant's perfunctory, undeveloped claim she set forth in the footnote concerning the jury instructions and we express no opinion about the sufficiency of the instruction given here. (See also *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160 [appellate court may disregard points raised in a footnote rather than being properly presented under a discrete heading with appropriate analysis].)

Despite thoroughly addressing the applicability of the substantial compliance doctrine in her opening brief, she waited to provide substantive argument on her due process claim in her reply brief. For the first time, at the end of her reply brief, defendant asserts that a section 1320 conviction based on substantial compliance violates her due process right to have every element of the offense proved beyond a

We answer both questions here in the affirmative.[6]

California Constitution, article I, section 12 provides in part that a person "may be released on his or her own recognizance in the court's discretion."

Section 1318 provides:

"(a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement which includes:

"(1) The defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending.

"(2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate.

"(3) The defendant's promise not to depart this state without leave of the court.

"(4) Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California.

---

reasonable doubt and unconstitutionally reduces the prosecution's burden of proof. We need not consider this argument either. As noted in *People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, footnote 2, " '[o]bvious considerations of fairness in argument demand that the appellant present all of [her] points in the opening brief. To withhold a point until the closing brief would deprive the [People] of [the] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence, the rule is that *points raised in the reply brief for the first time will not be considered*, unless good reason is shown for failure to present them before.' [Citation.]" (*Ibid*.)

[6] Our opinion is not based on the People's argument that rejection of the substantial compliance doctrine would lead to an absurd result, leaving the court with no recourse to compel the defendant's appearance in court. We find that argument unpersuasive, because section 978.5, subdivision (a)(1) authorizes issuance of a bench warrant if a defendant was ordered by a judge to appear and fails to appear, regardless of any release agreement.

"(5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release.

Section 1320, subdivision (b) (see fn. 1, *ante*) criminalizes a willful failure to appear in court as ordered while on OR release.[7]

Here, the contract signed by defendant contained everything required by section 1318 except for two items -- (1) a promise to obey all reasonable conditions imposed by the court or magistrate, and (2) a promise not to leave California without court permission. However, neither of these two items is implicated in this case. There is no allegation or claim that defendant left California. And the trial court did not impose any additional conditions.

Indeed, the requirement that a defendant agree to obey reasonable conditions imposed by the court is not implicated in the context of a defendant who is released from jail on his or her promise to make his or her first appearance in court. Until a defendant makes that first appearance, a court cannot weigh the circumstances and impose reasonable conditions. (*In re York* (1995) 9 Cal.4th 1133, 1151, fn. 10 (*York*) [the reasonableness of OR conditions necessarily depends upon the connection between the conditions and the crime charged and the particular defendant's background].) Enacted in 1979 and operative in 1981, section 1318 did not require the defendant to promise to obey reasonable conditions imposed by the court. (§ 1318; Stats. 1979, ch. 873, § 12, pp. 3043-3044; see § 17, p. 3044.) It provided for OR release simply upon a written promise to appear, to not leave the state, and to waive extradition, along with the defendant's acknowledgment that he or she was informed of the consequences and penalties for violation of the conditions of release. (*York*, *supra*, 9 Cal.4th at p. 1142, fn. 6; Stats. 1979, ch. 873, § 12, p. 3043.) The requirement that a defendant promise to

---

[7] A separate statute criminalizes failure to appear after release on bail. (§ 1320.5.)

8

obey all reasonable conditions imposed by the court became law in 1988. (*York*, *supra*, 9 Cal.4th at p. 1143; Stats. 1988, ch. 403, § 4, p. 1757.) In enacting this amendment, it was the Legislature's intent "to codify the authority of a court or magistrate, in imposing OR conditions, to weigh considerations relating to the public safety that extend beyond those intended to ensure subsequent court appearances." (*York*, *supra*, 9 Cal.4th at p. 1144.)

Defendant relies on three cases for the proposition that a release agreement is not an OR release subjecting a person to a section 1320 conviction for failing to appear in court following OR release, unless the release agreement expressly contains each of the five points set forth in section 1318. In *People v. Jenkins* (1983) 146 Cal.App.3d 22 (*Jenkins*), cited by defendant, this court expressly declined to decide the issue in this appeal -- whether substantial compliance with section 1318 can suffice. (*Jenkins*, *supra*, at pp. 25-26, fn. 3.) The other two cases defendant cites, *People v. Mohammed* (2008) 162 Cal.App.4th 920 (*Mohammed*), decided by the Sixth Appellate District and *People v. Hernandez* (2009) 177 Cal.App.4th 1182 (*Hernandez*), decided by the Fifth Appellate District, involved situations where there was no written agreement. In that context, the court in *Mohammed* did say the doctrine of substantial compliance is inapplicable to section 1318, but its reasoning was grounded on the substantial compliance doctrine applicable to *contract law*. The issue as we perceive it is one of substantial compliance with a statute, not substantial compliance with a contract.

In *Jenkins*, this court affirmed a trial court's section 995 dismissal of an information charging failure to appear (§ 1320), where the OR agreement signed by the defendant failed to state that the defendant had been informed of the consequences and penalties of violating the conditions of his release, a new requirement set forth in the then-recently operative section 1318. The defendant, who had been released on his OR by the court, cited this failure and this failure alone as the grounds for his motion. (*Jenkins*, *supra*, 146 Cal.App.3d at p. 24.)

9

Although section 1318 was operative at the time of the defendant's OR release, the agreement in *Jenkins* tracked the language and requirements of a predecessor statute enacted in 1959, but repealed about four months earlier. (*Jenkins*, *supra*, 146 Cal.App.3d at p. 25.) The agreement expressly stated the defendant agreed (1) he would appear as ordered by the court, (2) waive extradition if apprehended outside of California, and (3) the court could revoke OR and return him to custody or set bail. (*Id*. at pp. 24-25.) Unlike here, the agreement did not include the statutorily mandated acknowledgment that the defendant had been " 'informed of the consequences and penalties applicable to violation of the conditions of release.' (§ 1318, subd. (a)(4).)" (*Jenkins*, *supra*, 146 Cal.App.3d at p. 25.) On appeal, against this backdrop, this court held that section 1318 expressly defines and delimits the conditions of an OR release and, although section 1320 does not expressly refer to section 1318, the OR release referenced in section 1320 requires a release agreement which conforms to the criteria enumerated in section 1318. (*Jenkins*, *supra*, at p. 27.)

The focus of this court in *Jenkins* was primarily the omission of the consequences warning. The court referred to that new requirement as a "significant addition" and expressly noted that "the signed agreement must include an acknowledgment that defendant 'has been informed of the consequences and penalties applicable to violation of the conditions of release.' " (*Jenkins*, *supra*, 146 Cal.App.3d at p. 27.) The court then stated, "[u]nder the statute, unless defendant complies with this and other prescribed conditions, he 'shall not be released from custody under an own recognizance.' [Citation.]. . . However else it might be characterized, a release without bail which does not comply with the specific requirements of section 1318 is not a release 'under an own recognizance.' " (*Ibid*.) The court reasoned that, "although [section 1320] does not refer to section 1318, section 1320, subdivision (b), unmistakably assimilates that section's requirements by virtue of its exclusive application to those 'released from custody on . . . own recognizance.' The status of release on [OR] is defined by section 1318;

section 1320, subdivision (b), applies only to those who meet that description. The 'own recognizance' release referred to in section 1320, subdivision (b), is one which conforms to the requirements of section 1318. [¶] Since there was a failure of proof that each of the criteria enumerated by section 1318 was satisfied, defendant's release by the superior court pursuant to a signed but defective agreement was not on his own recognizance within the contemplation of section 1320, subdivision (b). Accordingly the evidence before the magistrate was insufficient to hold defendant to answer for trial in superior court on that charge." (*Jenkins*, *supra*, 146 Cal.App.3d at p. 27.)

However, this court in *Jenkins* declined to decide the applicability of the substantial compliance doctrine, though it mentioned the matter in dictum. In a footnote, again focusing solely on what it had noted was a "significant addition" to the statutory requirements, this court said: "*No evidence was presented to show defendant was ever actually informed of the consequences and penalties of his failure to appear*. On appeal, the People request this court to take judicial notice of previous agreements signed by defendant in the justice court in the prosecution for receiving stolen property which did so inform him. [¶] A motion to dismiss challenges the sufficiency of the evidence before the magistrate. *We need not decide whether substantial compliance will excuse literal compliance* or, if so, whether the offered proof satisfactorily establishes substantial compliance with section 1318 because this proof was not introduced at the preliminary examination. The request to take judicial notice is therefore denied. [¶] We note that a policy of accepting proof of substantial compliance in lieu of literal compliance *in the instant context* has little to recommend it. Literal compliance with section 1318 is easily achievable and simple to prove while resolution of recurring issues of substantial compliance would cast a significant burden on the judicial system." (*Jenkins*, *supra*, 146 Cal.App.3d at pp. 25-26, fn. 3, italics added.)

Thus, this court's dictum in *Jenkins* related to whether there was substantial compliance with the requirement that defendants be put on notice of the consequences

of failing to appear. No reference whatsoever was made to the other recently added requirement -- that the defendant promise not to leave the state without the permission of the court. Thus, the court was not called upon to decide whether substantial compliance would apply where a defendant was informed of the consequences of failing to appear, but not warned about the consequences of leaving the state. And the statutory requirement that a defendant promise to abide by reasonable conditions imposed by the court -- a requirement that is not relevant in a situation where a defendant is released from jail on the promise to make a first appearance in court -- had not yet been enacted, so this court was not faced with the prospect of deciding whether the substantial compliance doctrine might apply if that item were omitted.

In *Mohammed*, unlike here, there was no written agreement in the prosecution for failure to appear. (*Mohammed*, *supra*, 162 Cal.App.4th at p. 925.) As a substitute, the trial court allowed the prosecution to adduce evidence of the custom and practice related to the professional responsibility of defense counsel to acquaint clients with their obligations on OR release. (*Mohammed*, *supra*, at p. 926.) The trial court found that the undisputed facts showed substantial compliance with section 1318. (*Mohammed*, *supra*, at pp. 926-927.) The Sixth Appellate District reversed, citing *Jenkins*. (*Mohammed*, *supra*, at p. 933.)

The *Mohammed* court acknowledged this court's discussion of the substantial compliance doctrine in *Jenkins*, noting that discussion was dictum. (*Mohammed*, *supra*, 162 Cal.App.4th at p. 932.) It further noted that the defendant in *Jenkins* signed a written agreement that partially complied with section 1318. (*Ibid*.) The *Mohammed* court then went on to decide the issue, reasoning, "the judicially created doctrine of substantial compliance is not available in this situation because the contract or agreement into which a defendant must enter to obtain OR release is analogous to a unilateral contract. [Fn. omitted.] 'A unilateral contract is one in which a promise is given in exchange for some act, forbearance or thing; there is only one promisor.' [Citation.] Thus, in this situation,

12

the court releases the defendant from custody if and when the defendant performs (signs the written agreement pursuant to section 1318), but the court has no right to compel the defendant's performance. Furthermore, even if the defendant performs, the court is not under any obligation to release the defendant on OR. The court could choose to release the defendant on bail instead." (*Mohammed*, *supra*, 162 Cal.App.4th at pp. 932-933.) The *Mohammed* court added a footnote that the doctrine of "substantial performance/compliance" applies only to bilateral contracts. (*Id*. at p. 933, fn. 10.)

The court in *Mohammed* further reasoned that allowing substantial compliance with section 1318 would condone the trial court's disregard for a legislative enactment. (*Mohammed*, *supra*, 162 Cal.App.4th at p. 933.) And the *Mohammed* court agreed with what this court said in the *Jenkins* footnote -- literal compliance with section 1318 is easily achievable and simple to prove, while resolution of substantial compliance issues would burden the courts. (*Ibid*.) The *Mohammed* court concluded, "because there was no evidence in this case of a written agreement conforming to section 1318 produced at trial, there was insufficient evidence to convict appellant of willful failure to appear while out on OR." (*Ibid.*)

In *Hernandez*, the trial court temporarily released the defendant from custody before sentencing to allow him to visit his sick wife, on the condition that he return to court for sentencing the following week. (*Hernandez*, *supra*, 177 Cal.App.4th at p. 1186.) The defendant orally promised to return but, like the defendant in *Mohammed* and unlike here, never signed a formal written agreement under section 1318. Thereafter, the defendant failed to return to court. The defendant was later arrested and convicted for a new theft offense. Additionally, an enhancement for commission of a crime while released from custody on bail or OR (§ 12022.1, subd. (b)) was found true (*Hernandez*, *supra*, at p. 1186). On appeal, the court struck the sentence enhancement because the defendant was not out on bail, and the emergency pass to visit his wife was not an OR release consistent with section 1318. (*Hernandez*, *supra*, at p. 1190.) The Fifth

13

Appellate District said, "We concur with *Mohammed* and *Jenkins* that the Legislature intended to make compliance with section 1318, including the necessity of a signed release agreement containing the required stipulations, an essential part of what constitutes an O.R. release." (*Hernandez, supra,* 177 Cal.App.4th at p. 1191.)  Although *Mohammed* and *Jenkins* dealt with section 1320 rather than section 12022.1, both sections refer to OR release as a basis for their application. (*Ibid.*)  "A defendant may obtain an O.R. release *only if* the requirements of section 1318 are met.  [Citation.]  It follows that if the requirements of section 1318 are not satisfied and the defendant is nonetheless released, that release is not an O.R. release as defined by the Legislature and hence cannot be the basis for prosecution under sections 1320 or 12022.1, subdivision (b).  It is reasonable to conclude, and we do so here, that the Legislature intended the statutory criteria for an O.R. release to apply in a consistent manner when used in these related sections of the Penal Code.  (See § 1270, subd. (b) [expressly applying § 1318 to exercise of a trial court's discretion to grant an O.R. release].)" (*Ibid.*)

Here, we are called upon to decide the issue undecided in *Jenkins* -- whether substantial compliance may ever excuse literal noncompliance with section 1318.[8]

---

[8]  By motion filed January 31, 2012, defendant requested that this court take judicial notice of legislative history of an irrelevant 1996 amendment of section 1320, which added that the offense of failure to appear applies to persons *convicted* of a crime, as well as persons *charged* with a crime.  Defendant argues the history is relevant because the amendment was enacted to abrogate an appellate court decision, and since the Legislature has not amended section 1318 to abrogate *Jenkins*, that means the Legislature endorses *Jenkins*.  However, in the absence of legislative history acknowledging *Jenkins*, this is " ' " ' " 'a weak reed upon which to lean,' " ' " ' " and much more than this is required before an inference of acquiescence is elevated to implied legislation.  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1208.)  This is particularly so here where not only is there no mention of *Jenkins* in the legislative history, but there is also no indication the Legislature ever considered the potential applicability of the doctrine of substantial compliance.  As indicated in footnote 2, *ante,* we deny defendant's request for judicial notice because the documents are irrelevant to this appeal.  We also disregard defendant's citation to a depublished case.

14

And we do so in circumstances that are materially different from the circumstances presented in *Jenkins*, *Mohammed*, and *Hernandez*. We conclude that in this case, the doctrine of substantial compliance applies, and we decline to follow *Mohammed* because that court relied upon inapposite contract law.

The People argue we should overrule *Jenkins* and affirm the judgment. However, we can uphold defendant's conviction without overruling *Jenkins*, because *Jenkins* expressly acknowledged the potential applicability of substantial compliance but declined to decide the issue. " 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' " (*People v. Scheid* (1997) 16 Cal.4th 1, 17, quoting *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.) Accordingly, the *Jenkins* footnote where this court stated there is "little to recommend" accepting proof of substantial compliance "in the . . . context" of that case (*Jenkins*, *supra*, 146 Cal.App.3d at p. 26, fn. 3) is nonbinding dictum. Unlike *Jenkins*, here we have a case where there *is* much to recommend application of the substantial compliance doctrine.

First, the "significant addition" to section 1318 upon which this court in *Jenkins* focused -- the warning about the consequences of failing to appear -- was in the written agreement defendant signed here. No claim can be made that defendant was unaware she could be prosecuted for failure to appear. We have little difficulty concluding that a written agreement that does not include a consequences warning could never be held to substantially comply with section 1318. But that is not what happened here, and had the written agreement in this case been at issue in *Jenkins*, there would have been reason to apply the substantial compliance doctrine.

Second, the two clauses missing from the release agreement -- not to leave the state and to obey any reasonable conditions imposed by the court -- are completely immaterial to defendant's section 1320 violation. Defendant did not leave the state and she is not being prosecuted for violation of conditions added by the court. Indeed, a

defendant cannot be prosecuted under section 1320 for leaving the state or for disobeying conditions imposed by the court. Section 1320 punishes a willful failure to appear, nothing else. In that regard, the only clauses in section 1318 that directly relate to a defendant's failure to appear are the promise to appear (§ 1320, subd. (a)(1)) and the consequences warning (§ 1320, subd. (a)(5)), the latter of which fairly puts a defendant on notice that a failure to appear will result in a new prosecution.

Third, apart from the fact that a defendant cannot be punished under section 1320 for disobeying reasonable conditions imposed by the court, the required promise to obey such conditions does not apply in the context of a release from jail by jailers on a promise to make a first appearance in court. Thus, for this additional reason, that promise is immaterial to a failure to appear prosecution. Nothing has been presented to us to suggest that the Legislature intended that a failure to appear prosecution may not go forward when a written agreement does not include an acknowledgment and promise that could not have bearing on the defendant's failure to appear at an initial appearance in court as ordered. To the contrary, as noted *ante*, the Legislature added the court-imposed conditions clause to allow courts (not jailers) "to weigh considerations relating to the public safety that extend beyond those intended to ensure subsequent court appearances." (*York*, *supra*, 9 Cal.4th at p. 1144.) The Legislature clearly contemplated by this amendment "the authorization of conditions *unrelated* to ensuring an accused's future appearance in court." (*Id*. at p. 1145.)

Fourth, in this case, there is no significant burden on the judicial system to hold that an otherwise complete and executed written release agreement is valid as an OR release despite the absence of clauses that are not at issue in the particular prosecution. Unlike in *Jenkins* and *Mohammed*, no additional evidence or proof is required to prove that defendant promised to appear and was given the key warning about the consequences of failing to appear.

We agree with *Mohammed* to the extent it holds that a section 1320 conviction will not stand when there was no signed written agreement. There is a certain level of formality and solemnity associated with a writing signed by the defendant. And without a writing, there will be proof problems as to what a defendant was told and his or her acknowledgment thereof. A writing containing a promise to appear and an acknowledgment of the consequences for failing to do so, signed by the defendant, is an absolute prerequisite, without which there could never be substantial compliance.

On the other hand, we respectfully disagree with *Mohammed*'s blanket holding that the substantial compliance doctrine is inapplicable to section 1318. Further, we do not agree with the *Mohammed* court's reliance on the principle that the doctrine of substantial compliance applies only to bilateral contracts and therefore cannot be applied to OR release agreements because they are analogous to unilateral contracts.[9] The noncompliance in the OR release agreement context is the government's noncompliance with a statute (§ 1318), not a party's noncompliance with a contract. Therefore, contract law is not controlling here.

Where the question is compliance with a *statute*, different rules are in play. Even if a statute is considered mandatory, substantial compliance may suffice in some circumstances if the purpose of the statute is satisfied. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194 ["While 'the word "shall" in a statute is ordinarily deemed mandatory, and "may" permissive' [citation], a court may consider the

---

[9] As we noted in our quote from *Mohammed*, *ante*, the *Mohammed* court characterized OR release as a unilateral contract because the only performance by a defendant is the defendant's signing of the release agreement the court has no right to compel the defendant's performance. (*Mohammed*, *supra*, 162 Cal.App.4th at p. 933.) But a release agreement also contains the defendant's express promise of future performance -- to appear in court on a future date, and there is a mechanism to compel performance of that promise, i.e., the court's authority to revoke OR and issue a bench warrant. (§ 978.5, subd. (a)(3).)

17

consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose' "]; 3 Sutherland, Statutes and Statutory Construction (7th ed. 2008) § 57:26, p. 97 [substantial compliance with even mandatory provisions may be legally sufficient].) For example, in *Zamudio*, our high court was called upon to determine whether the trial court substantially complied with section 1016.5, which requires trial courts to admonish defendants who enter guilty and no contest pleas about three immigration consequences. The trial court expressly advised the defendant about possible consequences leading to deportation or denial of naturalization, but did *not* advise him about the possible consequence of "exclusion from admission to the United States." (*Zamudio*, *supra*, at pp. 188, 189.) The *Zamudio* court wrote, "if defendant's circumstances at the time of his 1992 plea did not, in fact, allow for the possibility of his subsequent exclusion from the United States in the event he were deported, the advisements he received concerning deportation and naturalization would have been in substantial compliance with the requirements of section 1016.5, in that they would have informed defendant of the only consequences pertinent to his situation. Because the record does not disclose whether defendant would have been eligible for readmission, we are unable to conclude that the trial court erred in failing to deny defendant's motion on grounds of substantial compliance." (*Zamudio*, *supra*, 23 Cal.4th at p. 208.)

"Substantial compliance" means actual compliance in respect to the substance essential to every reasonable objective of the statute, as distinguished from mere technical imperfections of form. (*People v. Hoag* (2000) 83 Cal.App.4th 1198, 1211-1212 [police officers substantially complied with statutory knock-notice requirement before entering home to execute search warrant]; 3 Sutherland, *supra*, § 57:26, p. 97 & fn. 4, citing *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23.) The essential inquiry is whether under the circumstances the policies underlying the statute were served. (*Hoag*, *supra*, 83 Cal.App.4th at p. 1208.) "Where there is compliance as to all matters of

18

substance[,] technical deviations are not to be given the stature of noncompliance." (*Cal-Air*, *supra*, 21 Cal.App.4th at p. 668.)

The objectives of sections 1318 and 1320 are to ensure the accused's future appearance in court and to protect public safety. (See *York*, *supra*, 9 Cal.4th at pp. 1143-1145; see also § 1270 [public safety is primary consideration for OR release].) Here, the written release agreements contained all terms pertinent to defendant's section 1320 prosecution -- her promise to appear in court and the consequences of her failure to appear. The omitted items -- promises not to leave the state without permission and abide by reasonable conditions imposed by the court -- were immaterial to the section 1320 prosecution. The objectives of the statutes were satisfied. We conclude the substantial compliance doctrine applies in this situation, and that there was substantial compliance.

Defendant suggests in her reply brief that we cannot find substantial compliance unless we conclude section 1318's inclusion of the items omitted from her agreement was pointless or optional. She cites *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, in which the court excluded an affidavit opposing summary judgment on the ground the affidavit was signed outside of California without complying with a statutory requirement that out-of-state declarations contain a statement that such declaration under penalty of perjury occurs under the laws of the State of California. (*Id.* at pp. 606, 610-611.) The Supreme Court required literal, not substantial, compliance, stating nothing suggested this item was pointless or optional, courts may not excise words from statutes, and California has an interest in preventing perjury even as to documents signed outside the state. (*Id.* at p. 611.) However, *Kulshrestha* does not require us to conclude that section 1318 contains pointless or optional provisions in order to apply the substantial compliance doctrine here. It suffices that the omitted terms are immaterial to this section 1320 prosecution, much as *Zamudio* said an advisement of immigration consequences may substantially comply with the statute despite omission of the

19

statutorily required admonition about exclusion, if that item was not pertinent to the particular situation. (*Zamudio*, *supra*, 23 Cal.4th at p. 208.)

We observe this is not a matter for application of the rule of lenity -- that a criminal statute must be interpreted to favor the criminal defendant. The rule of lenity applies " ' "only if two reasonable interpretations of the statute stand in relative equipoise." ' " (*People v. Soria* (2010) 48 Cal.4th 58, 65; *People v. Ledesma* (1997) 16 Cal.4th 90, 101 [conflicting case law on whether statute was mandatory or directory did not render statute ambiguous so as to apply rule of lenity].)[10] Here, it would be unreasonable to adopt defendant's construction, that she can breach a promise to appear, without penal consequences, and with full knowledge of those consequences, just because the agreement omits provisions immaterial to her failure to appear.

### DISPOSITION

The judgment is affirmed.

       MURRAY      , J.

We concur:

    NICHOLSON    , Acting P. J.

     BUTZ       , J.

---

[10] Moreover, the rule of lenity does not necessarily apply every time there are two or more reasonable interpretations of a penal statute. (*People v. Manzo* (2012) 53 Cal.4th 880, 889.) "Rather, the rule applies ' "only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." ' [Citation.]" (*Manzo*, *supra*, 53 Cal.4th at p. 889.)