Filed 6/17/22  Mejia v. Hopkins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ERIK DANIEL MEJIA, | C093485 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UCH-2020-0009595) |
| v. | |
| JERMAINE ANTHONY HOPKINS, | |
| Defendant and Appellant. | |
| NAOMIE LETICIA MEJIA, | C093486 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UCH-2020-0009599) |
| v. | |
| JERMAINE ANTHONY HOPKINS, | |
| Defendant and Appellant. | |

1

Defendant Jermaine Anthony Hopkins (Hopkins), appearing in propria persona, appeals the trial court's orders denying his special motions to strike two petitions for civil harassment restraining orders filed by plaintiffs Naomie Leticia Mejia and her then-husband Erik Daniel Mejia (Naomie and Erik, respectively), also appearing in propria persona. Naomie and Erik make no substantive arguments on appeal and rely instead upon the trial court's ruling.

We conclude that the trial court erred by denying Hopkins's motions to strike. We accordingly reverse and remand without prejudice to Naomie and Erik's filing a new petition grounded on unprotected activity.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Factual history*

In February 2020, Naomie and her husband Erik filed for divorce. In May 2020, Naomie and Hopkins, who met in second grade, rekindled their friendship with each other. In early July 2020, Naomie and Hopkins had a brief physical relationship. Thereafter, on July 6, Naomie sent an e-mail to Hopkins in which she apologized and said she was "in no way ready to provide anything more than friendship" to Hopkins. Hopkins assured Naomie she need not apologize, and offered to "back off" if needed. They continued their friendship.

In September 2020, Naomie sent Hopkins a text message saying that although she enjoyed their friendship, it was apparent they were "not quite on the same page," because she wanted only friendship while he seemed to want more. Shortly thereafter, Naomie told Hopkins there was no possibility of a dating relationship. Hopkins responded with a lengthy e-mail seeking to define the terms of their relationship, to which Naomie did not respond.

From there, Hopkins's communications began to escalate. On September 21, Hopkins e-mailed Erik a copy of Naomie's July 6 e-mail following their physical encounter. Hopkins also posted Yelp reviews of Naomie and the barbershop at which she

was employed. His reviews stated that the barbershop was spreading COVID-19 because it continued to do business despite a government shutdown order, and that potential customers should "avoid this business and especially Naomie Mejia at all costs." The reviews further said that Naomie was a narcissist, bipolar, or otherwise suffered from mental illness.

Naomie asked Hopkins to cease contact with her and her family. Hopkins told Naomie not to flatter herself, and that he also would like her to "cease and desist." However, two days later, Hopkins e-mailed Erik again, attaching hundreds of pages of text messages between himself and Naomie. His e-mail stated: "Naomie was only using this guy [Hopkins] as 'leverage' to get out of the divorce," and expressly referenced Naomie and Erik's divorce case by name and case number.

On October 9, 2020, Hopkins sent a letter to Naomie apologizing for his "appalling" behavior. While he did not mention any incident in particular, Hopkins referred to his actions as "hurtful" and "tasteless" and stated he "accept[ed] full and complete responsibility for all of that behavior." Naomie sent him a text message asking that he remove his Yelp reviews in light of his apology. Hopkins said he thought he had already removed them, apologized again, and subsequently confirmed he removed them. However, several days later, Hopkins sent lengthy text messages to Naomie, insisting on her "prompt reply" or it would be "back to 'game on.' " He said, "[W]hy should I continue to be concerned about not ruining your life by and through any lawful means?"

On November 5 and 6, Hopkins sent Erik four e-mails, each styled as a "preservation request" and "spoliation notice" regarding Hopkins's anticipated petition for a restraining order against Erik. On November 7, Hopkins e-mailed Naomie and Erik a "litigation-related communication" containing a link to an article about narcissists. He explained in the e-mail that he intended to file a copy of the article with a declaration in their divorce proceeding. The next day, Hopkins sent a lengthy follow-up e-mail stating

he would not file the declaration, while also discussing his feelings about Naomie and Erik and referencing his "civil harassment claims" against Erik.

On November 11, Hopkins sent Erik four e-mails, each labeled as a "litigation related communication" regarding Erik and Naomie's divorce proceeding. In those e-mails, Hopkins accused Erik of failing to disclose his assets in the divorce, and threatened to inform Erik's church about Erik's "actions in this litigation" and "apparent treatment of women." He also e-mailed Erik a demand to preserve documents pertaining to police service calls by or regarding Erik, in reference to Hopkins's anticipated application for a restraining order against Erik. The e-mail further stated that he would file a criminal complaint against Erik for perjury in his divorce action, and threatened to seek prosecution if he learned that Erik physically injured Naomie.

On November 12, Hopkins e-mailed Erik's employer. The e-mail stated that Erik "may or may not" have made "harassing phone calls" to Hopkins during work hours, "may have also committed tortious conduct against [Hopkins] for which [Erik's employer] may be liable," and included gratuitous assertions about Erik possibly having assaulted his spouse and failed to disclose assets in his divorce proceedings. Attached to the e-mail was a "demand for preservation of electronically stored information and other evidence" relevant to Hopkins's anticipated legal action against Erik. Hopkins also e-mailed Naomie a link to the "Essential Guide of Divorce" and provided advice on filing for divorce.

B.     *Procedural history*

On November 17, 2020, Naomie filed a petition for a civil harassment restraining order against Hopkins, naming Erik, her three children, and her coworker/roommate as additional protected persons. (Code Civ. Proc., § 527.6.)[1] Her petition referred to the

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

4

following allegedly harassing behavior:  (1) Hopkins's e-mail to Naomie and Erik regarding narcissists, which she alleged "defam[ed]" her; (2) Hopkins's e-mails to Erik with Naomie's e-mail regarding her sexual encounter with Hopkins and the 300 pages of messages between Hopkins and Naomie; (3) Hopkins's posts on her employer's Yelp page; (4) Hopkins's other text messages and e-mails to Naomie and Erik; and (5) Hopkins's e-mail to Erik's employer accusing Erik of harassment and assault. Naomie sought an order prohibiting Hopkins from harassing her, contacting her, and also asked that he "cease any commenting/posting on any websites associated with [her] workplace and or professional barbering services [she was] directly affiliated with" and "[c]ease access to [her] ongoing divorce case."

On that same date, Erik also filed a request for a restraining order against Hopkins on behalf of himself, Naomie, their three children, and his mother.  As harassing conduct, Erik also referenced Hopkins's e-mails to Erik and to Erik's employer, which included Hopkins's threats to contact Erik's church and Hopkins's apparent investigation of Naomie and Erik's divorce proceedings.  Erik requested an order to prohibit Hopkins from harassing and contacting him, as well as contacting people with whom Erik was associated, and prohibiting Hopkins from accessing his divorce file.  The trial court denied Naomie and Erik's requests for temporary restraining orders (TRO's) against Hopkins and set their restraining order application for hearing.  In denying the TRO's, the trial court found that the facts did not sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed or harassed Naomie and Erik or caused substantial emotional distress.

Thereafter, Hopkins filed a request for civil harassment restraining order against Erik.  He alleged that Erik subjected him to surveillance and made a series of "annoying, harassing and/or threatening telephone calls" in which he threatened to " 'fucking stab' " and " 'fucking kill' " Hopkins.  The trial court denied Hopkins's request for a TRO and set the matter for hearing.

Hopkins then filed two identical special motions to strike Naomie and Erik's petitions under California's anti-SLAPP statute. (§ 425.16.) In his motions, Hopkins argued that the petitions arose from the following protected activities: (1) Hopkin's e-mail to Erik's employer; (2) Hopkins's Yelp postings; and (3) Hopkins's e-mails to Erik regarding his anticipated request for a restraining order against Erik. He further argued that Naomie and Erik could not show a possibility of prevailing on their petitions. Naomie and Erik opposed the motions, arguing Hopkins's communications were not protected, but rather constituted threats and harassment. Their oppositions contained additional evidence of Hopkins's continued attempts to communicate with Naomie. Specifically, they referenced a threatening e-mail from Hopkins to Erik, and provided approximately 40 pages from Hopkins's diary that Hopkins sent to Naomie on November 27, which they argued reflected Hopkins's obsession with Naomie and extreme hatred towards Erik. Their oppositions also referred to Hopkins's own declaration in which he said that Naomie needed mental health treatment and reiterated he " 'hate[d]' " Erik, referring to him as a " 'little bitch.' " They argued that their evidence of Hopkins's actions, particularly after they filed for restraining orders, established a probability of prevailing in their cases.

The trial court held a hearing and orally denied Hopkins's motions. In doing so, the court found that Naomie and Erik alleged Hopkins made false, slanderous statements which did not constitute protected speech under the anti-SLAPP statute.

On January 14, 2021, Hopkins filed a petition for a civil harassment restraining order against Naomie, alleging she is mentally unstable, and that she twice contacted him via text message in October and November 2020, despite her stated desire to cease contact. The trial court denied his request for a TRO. Hopkins then appealed the trial court's denial of the anti-SLAPP motions. On our own motion, we consolidated Naomie and Erik's cases for purposes of this appeal.

6

DISCUSSION

Hopkins argues the trial court erred by denying his anti-SLAPP motions. His principal contention is that his Yelp reviews and his e-mails regarding his anticipated restraining order against Erik are constitutionally protected free speech or petitioning activity contemplated by the anti-SLAPP statute.[2] He further contends that Naomie and Erik cannot show a probability of prevailing on their claims. We address Hopkins's contentions in turn.[3]

A.     *California's anti-SLAPP statute*

The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) Consequently, "the anti-SLAPP statute is to be construed broadly." (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 508.) The statute defines four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or

---

[2]     We need not consider Hopkins's assertion that one of the remedies requested in the petitions—prohibiting Hopkins from accessing Naomie and Erik's divorce proceedings—qualifies for anti-SLAPP protection, as Hopkins provides no argument or authority on this point. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5.)

[3]     Hopkins also appears, in passing, to challenge the trial court's failure to rule on his evidentiary objections made in response to Naomie and Erik's oppositions. However, Hopkins provides no argument or authority on the matter, and thus again, we need not consider this contention. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Carroll, supra*, 222 Cal.App.4th at p. 1412, fn. 5.) Moreover, because Hopkins failed to obtain a ruling on the objections in the trial court, they are deemed waived on appeal, and we may consider all evidence presented by the parties in our review. (*Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1014, fn. 4.)

judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Anti-SLAPP motions may challenge section 527.6 petitions for civil harassment restraining orders because such petitions constitute "causes of action" under section 425.16. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 642.)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) " '[W]here a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct [citations] . . . .' [Citation.]" (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1369.) We review a trial court's ruling on a special motion to strike de novo. (*Park, supra*, 2 Cal.5th at p. 1067.)

B.      *Step one—allegations arising from protected activity*

1.      *Hopkins's Yelp review*

Naomie's petition alleges that Hopkins harassed her by posting Yelp reviews about her and the barbershop where she worked. We conclude that Hopkins met his burden to show that his Yelp reviews are partially protected under the anti-SLAPP statute.

The anti-SLAPP statute protects "any . . . writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd.

8

(e).)  A Web site accessible to the public, such as Yelp, is a public forum for purposes of the anti-SLAPP statute.  (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360-1361, 1366 [Yelp review advising that dentist used potentially harmful nitrous oxide and silver amalgam was a writing in public forum on an issue of public interest].)  However, not every Web site post involves a public issue.  (*Wong, supra*, at p. 1366.)  Generally, a statement involves a public issue when it concerns a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest.  (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 (*Wilbanks*).)  As to the latter point, "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate."  (*Wilbanks, supra*, at p. 898.)  "[C]onsumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute."  (*Wong*, at p. 1366.)

The Yelp reviews are not in the record.  We therefore must glean their content from the parties' declarations, pleadings, and testimony.  (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, quoting § 425.16, subd. (b) ["In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' "].)  Naomie's petition alleged that Hopkins posted a Yelp review "to detour potential business and further interfere with not only [her] main source of income but [her] co-workers as well."  Her declaration in opposition to the anti-SLAPP motion did not mention the Yelp reviews.  At the trial court hearing, Naomie clarified that the reviews accused the barbershop of spreading COVID-19 by continuing to do business, advised customers to avoid the business and Naomie, and stated that Naomie suffered from multiple mental

9

illnesses. Naomie further stated that the barber shop was currently allowed to be open at the time of the January 2021 hearing, and that the barbershop had not received warning letters or been shut down, but she did not directly address whether Hopkins's allegations about the shutdown order were true.

Hopkins's declaration, in turn, states that on July 13, 2020, San Joaquin County issued a government shutdown order, which required hair salons and barbershops to cease indoor operations due to the COVID-19 pandemic.[4] The following day, Naomie informed Hopkins that the barbershop installed a tarp over the front window, allowing the shop to sneak customers in through the back door and continue operating outside of public view. Thus, according to Hopkins, his reviews informed the public that Naomie and the shop continued to run their business in violation of the county's July 13 order.

Based on the foregoing evidence, we conclude that the Yelp review was posted on a public forum and involved a public issue, namely, the public concern regarding a business's potentially illegal operation during the height of the COVID-19 pandemic. In July 2020, society's appropriate response to the pandemic was a widely-debated topic, and a business's decision to operate in defiance of a government shutdown order was relevant to the public discussion on this issue and was of public interest. (See, e.g., *Wilbanks, supra*, 121 Cal.App.4th at p. 900 [Web site posting insurance brokerage was under investigation and unethical was a "warning not to use plaintiffs' services" and thus connected to an issue of public concern]; *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146 [statements about plaintiff's character and business practices on Web site constituted consumer information that was in the public interest].) Further, if the

---

[4]  The July 13, 2020 order of the San Joaquin County Public Health Officer implementing the directives of the Governor of California and the California State Public Health Officer required multiple businesses in San Joaquin County, including hair salons and barbershops, to cease indoor operations.

barbershop was operating unsafely during the pandemic, the effects of its actions could sicken, and thus affect, numerous members of the public. As Hopkins's Yelp reviews were posted in a public forum in connection with a matter of public interest, they are protected speech under the statute.

We acknowledge that Hopkins's reviews also call Naomie a narcissist and question her mental health; these are personal opinions of no public interest. This personal attack in the Yelp review, along with Hopkins's subsequent apology and deletion of the reviews, also suggest that Hopkins was driven by personal animus when he posted the reviews. However, regardless of "assertions of an illicit motive, '[i]f the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply.' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008 (*Bonni*).) Similarly, neither the merit nor validity of Hopkins's Yelp review is relevant to the initial threshold question of whether the SLAPP statute may apply. Any " 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' " (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 94.) Accordingly, on balance, we must conclude at this stage that Hopkins's postings enjoy anti-SLAPP protection at the first step even though they may ultimately be proven untrue, stem from a personal dispute, and include abusive personal comments. (See *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1545-1551 [meetings addressing allegations that two church youth group leaders had an inappropriate relationship with a minor involved issue of public interest—protecting children from predators—despite police finding insufficient evidence of a crime].)

2. *Hopkin's e-mails regarding his anticipated civil harassment petition against Erik*

The petitions also arise from Hopkins's e-mails to Erik and Erik's employer regarding anticipated litigation.

The anti-SLAPP statute protects statements or writings made "in connection with" civil litigation. (§ 425.16, subd. (e).) A statement or writing is " 'in connection with' " litigation if it "relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266, fn. omitted (*Neville*).) In other words, " '[t]here must be a connection with an issue under review in that proceeding.' " (*McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 177, fn. omitted.)

Communications sent in anticipation of a lawsuit not yet filed may qualify as protected activity. (*Neville, supra*, 160 Cal.App.4th at p. 1268.) To gain protected status, a prelitigation statement must concern the subject of the dispute and be made in anticipation of litigation contemplated in good faith and under serious consideration. (*Ibid.*) The requirement that the litigation be contemplated "in good faith and under serious consideration" is not a test for malice, but rather focuses on whether the litigation was genuinely contemplated and ensures that hollow threats of litigation are not protected. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.) "[A] party need not demonstrate that it would succeed on the merits of the contemplated litigation in order to invoke the protection of . . . section 425.16." (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 793.) Further, a statement can be protected even if it is sent to persons "who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." (*Neville*, at p. 1270.)

Here, Hopkins's statements—expressions of personal animus towards Erik—raises questions about the merits of the restraining order Hopkins seeks against Erik, and his

12

motivation for seeking it. Nonetheless, the merits of Hopkins's lawsuit at this stage are not relevant unless Hopkins's petition for a civil restraining order against Erik is clearly barred as a matter of law. (*Bailey v. Brewer, supra*, 197 Cal.App.4th at 793.) Here, we cannot conclude that Hopkins's restraining order petition, on its face, is legally untenable.

Moreover, Hopkins actually filed suit against Erik, revealing that his document preservation requests to Erik were not hollow threats of litigation. And, Hopkins's e-mails to Erik generally involved the subject of the dispute, as they requested telephone logs and other communications related to his allegations of harassing phone calls, violent threats, and other such communications. Thus, we find that Hopkins has met his burden to show that his e-mails to Erik requesting preservation of documents for his anticipated request for restraining order against Erik fall under the broad protections of the anti-SLAPP statute as statements made "in connection with" civil litigation. (§ 425.16, subd. (e).)

Whether Hopkins's e-mail to Erik's employer qualifies for anti-SLAPP protection is more tenuous. In his opening brief, Hopkins represents, without support from the record, that he intended to file an action for defamation and intentional infliction of emotional distress against Erik's employer in the United States District Court for the Eastern District of California, as well as a civil harassment claim against his employer in the Alameda County Superior Court. While Hopkins's e-mail to Erik's employer states that Erik "may have [ ] committed tortious conduct against [Hopkins] for which [company] may be liable," the record does not show that Hopkins has a suit against Erik's employer, nor has Hopkins provided any factual basis upon which such litigation could be predicated. Indeed, the e-mail accuses Erik of perjury, domestic violence, and failing to disclose his assets to his spouse, none of which bear any relation to any potential claims involving his employer. Thus, to the extent Hopkins argues this e-mail is a communication made in anticipation of litigation against Erik's employer, Hopkins has

13

failed to meet his burden to show that such litigation was contemplated seriously and in good faith, and that the e-mail was protected activity on that basis.

Hopkins's e-mail also references his expected civil harassment claims against Erik, asserting that Erik "may or may not" have subjected Hopkins to harassing phone calls "during the hours he was at work." It provides Erik's employer with a copy of the document preservation request he sent to Erik, demanding preservation of electronically stored information related to Hopkins's anticipated civil harassment claim against Erik. It is Hopkins's burden to make a prima facie showing, through pleadings and evidence, that the e-mail relates to the substantive issues in the (anticipated) litigation against Erik *and* that Erik's employer has some interest in the litigation. (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 864-866 (*Paul*).) Yet neither the allegations in Hopkins's petition, nor the evidence in Hopkins's declaration establish a connection between Erik's alleged harassment and Erik's employer. The only purported interest that Erik's employer may have in the litigation is Hopkins's equivocal and purely speculative assertion, made in his e-mail, that Erik "may or may not" have made phone calls during work hours.[5]

While we must construe the anti-SLAPP statute broadly when considering whether the communication was made in connection with litigation, "we must also adhere to its express words and remain mindful of its purpose." (*Paul, supra*, 95 Cal.App.4th at p. 864, fn. omitted.) "The statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding." (*Id.* at p. 866.) Further, an "attempt to inject an issue into a proceeding does not render the issue relevant, nor can the attempted injection of an irrelevant matter transform it into an

---

[5]    Hopkins repeatedly asserts that Erik "judicially admits" that his employer may be liable for Erik's actions, but in support of this assertion, Hopkins cites to Erik's petition, which simply restates Hopkins's position that Erik's employer may be liable for Erik's actions.

issue 'under consideration or review' in the proceeding." (*Id*. at pp. 867-868.) By extension, an attempt to draw an uninvolved nonparty into anticipated litigation does not render a communication protected under section 425.16.

Hopkins has failed to show that Erik's employer has any interest in his anticipated litigation against Erik, or that the employer's documents bear any relationship, or are of any relevance, to Hopkins's civil harassment claims against Erik. And again, Hopkins makes no connection between his e-mail's mention of Erik's alleged perjury and domestic abuse against Naomie, Erik's employer, and Hopkins's anticipated suit against Erik. As Hopkins has failed to establish that Erik's employer has any interest in Hopkins's restraining order against Erik, Hopkins has not met his burden to show that the e-mail to Erik's employer was made in connection with litigation as contemplated by the anti-SLAPP statute. (*Paul, supra*, 95 Cal.App.4th at p. 867-868 [defendant's allegedly harassing investigation into plaintiff's personal matters did not involve issues related to lawsuit and thus were not protected under section 425.16].)

C. *Step two—probability of prevailing*

As Hopkins has shown that his Yelp reviews and e-mails to Erik regarding his restraining order against Erik constitute protected activity, the burden shifts to Naomie and Erik to show their claims have " 'at least "minimal merit." ' " (*Bonni, supra*, 11 Cal.5th at p. 1009.) However, Naomie and Erik failed to make any substantive arguments in this appeal, and thus provided no factual or legal authority to meet their burden.[6] On this basis alone, we must conclude Hopkins's anti-SLAPP motions are meritorious as to the protected activity. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [" 'When an issue is unsupported by pertinent or

---

[6]     Their joint responsive brief consists of one sentence: "There is no further response to the trial court's decision."

cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary' "].)

Moreover, even if we rely upon Naomie and Erik's oppositions to the anti-SLAPP motions filed in the trial court, we reach the same conclusion. Neither opposition addresses the Yelp reviews, nor do they squarely address Hopkins's document preservation requests to Erik, beyond stating that Hopkins's allegations of Erik's harassment underlying Hopkins's lawsuit are untrue. Instead, their oppositions focus on Hopkins's unprotected conduct and conduct after they filed their petitions. They contend that Hopkins's other actions and threats, including a November 21 e-mail to Erik cursing and threatening to physically hurt Erik if he abused Naomie, his obsessive diary entries, and statements from his declaration made after they filed suit, demonstrate that their civil harassment petitions are meritorious. But this argument ignores the central issue that we must consider in the second step of the anti-SLAPP analysis, that is, whether they have shown a probability of prevailing on their claims arising out of the *protected* activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 392 [a special motion to strike "cannot be defeated by showing a likelihood of success on the claims arising from unprotected activity"].)

When considering the alleged protected activity in the context of Naomie and Erik's petitions for relief, as we must, we conclude that Naomie and Erik cannot establish a probability of prevailing. (*Bonni, supra*, 11 Cal.5th at p. 1012.) To obtain a civil harassment restraining order, a person must prove, by clear and convincing evidence, that he or she was subject to either (1) "unlawful violence," (2) "a credible threat of violence," or (3) "a knowing and willful course of conduct directed at [him or her] that seriously alarms, annoys, or harasses [him or her], and that serves no legitimate purpose." (§ 527.6, subds. (b)(3) & (i).)

Naomie and Erik's petitions do not allege Hopkins engaged in unlawful violence or made a credible threat of violence. (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1156-1157 [a motion to strike

16

addresses the pleadings].) Thus, their allegations could only fall into the third category, course of conduct. However, section 527.6, subdivision (b)(1) expressly provides that "[c]onstitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) Here, we have concluded that Hopkins's Yelp reviews and e-mails to Erik regarding Hopkins's anticipated litigation are protected acts in furtherance of his constitutional rights of petition and free speech. (§ 425.16, subd. (b).) As they are constitutionally protected, Naomie and Erik cannot establish a course of conduct of harassment under section 527.6 based on Hopkins's protected conduct and have failed to meet their burden. (See *Thomas v. Quintero, supra*, 126 Cal.App.4th at p. 662.)

Still, we recognize that the petitions also were based in some part on *unprotected* activity, such as Hopkins's e-mails to Erik regarding the divorce and Hopkins's text messages to Naomie. Further, Naomie and Erik's oppositions filed in the trial court provide evidence of potentially escalating harassment that arose after they filed their petitions, also based on unprotected activity, including Hopkins's threatening e-mail to Erik and worrisome diary entries. Their evidence suggests that Naomie and Erik may be entitled to an injunction based on a course of conduct of harassing behavior that is not constitutionally protected or based on credible threats of violence. Accordingly, we will direct the trial court to dismiss the petitions without prejudice, such that Naomie and Erik may file, if desired, renewed petitions for restraining orders based on unprotected activity. (See *Searles v. Archangel* (2021) 60 Cal.App.5th 43, 56 [dismissing petition for civil restraining order without prejudice to allow plaintiff to file a new petition if harassment continues].)

D. *Attorney fees*

Hopkins's request for attorney fees is denied, as he is not represented by counsel and therefore is not entitled to attorney fees under the anti-SLAPP statute. (§ 425.16, subd. (c)(1); *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524-

17

525 ["decisional authority and the plain language of section 425.16, subdivision (c) support the conclusion that the commonly understood definition of attorney fees applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel"].)

## DISPOSITION

The orders denying Hopkins's special motions to strike are reversed. We remand the matter to the trial court to grant the motions and dismiss Naomie and Erik's petitions without prejudice to Naomie and Erik filing new petitions based on activity that is not constitutionally protected. Each party is to bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


          KRAUSE        , J.


We concur:


     ROBIE        , Acting P. J.


     HOCH        , J.