Filed 8/6/25  P. v. Gammage CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,    Plaintiff and Respondent,    v.  JOHNNIE VINCENT GAMMAGE,    Defendant and Appellant. | D086175    (Super. Ct. No. FSB22001670) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Cheryl C. Kersey, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Johnnie Vincent Gammage of second degree murder, attempted murder, and possession of a firearm by a prohibited person after

he shot three people outside his apartment building. On appeal, Gammage contends the trial court erroneously denied his objection to the prosecutor's use of a peremptory challenge to excuse a prospective juror. He also contends his prior juvenile adjudication does not qualify as a strike under the Three Strikes law. We reject both contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Prosecution's Case*

E.G. did not get along with Gammage, who lived in an apartment upstairs from her. At some point, E.G. learned Gammage was a registered sex offender.

One afternoon in June 2022, E.G. and her friend got into an argument with Gammage over a parking spot. When Gammage approached E.G.'s car, her friend got out of the car and confronted Gammage. E.G.'s friend and Gammage began physically fighting, and Gammage knocked the friend to the ground.

E.G. got out of her car and began screaming at Gammage. She "told him to shut the fuck up with his sex-offending ass." Gammage responded by pulling a gun from under his shirt and shooting E.G., causing non-fatal injuries.

By this time, E.G.'s 17-year-old son had come out of their apartment. Her son said, "Mom, he shot you," which prompted E.G. to look in his direction and see her son "fly back." Gammage had fatally shot her son. Gammage then shot and injured E.G.'s friend.

## II.

### *Conviction and Sentence*

The jury convicted Gammage of one count of second degree murder (Pen. Code, § 187, subd. (a)), two counts of attempted premeditated murder (*id.*, §§ 187, subd. (a), 664), and one count of possession of a firearm by a prohibited person (*id.*, § 29800, subd. (a)). The jury further found true allegations Gammage personally used a firearm and intentionally discharged a firearm causing death (*id.*, § 12022.53, subds. (b)–(d)). In a bifurcated proceeding, the trial court found Gammage had a prior strike conviction. The trial court sentenced Gammage to a total prison term of 20 years plus 83 years to life.

### DISCUSSION

## I.

### *Objection to Prosecutor's Use of a Peremptory Challenge*

Gammage contends the trial court violated his constitutional and statutory rights under Code of Civil Procedure[1] section 231.7 when it denied his objection to the prosecutor's use of a peremptory challenge to excuse Prospective Juror No. 120 (PJN 120). We conclude the claim is forfeited.

A. *Additional Background*

PJN 120 was a Black woman who worked as a psychiatric technician at Patton State Hospital, had a brother in prison for murder, and had no prior jury experience. In response to questioning during voir dire, PJN 120 explained she knew people who worked in law enforcement through her job. She agreed "it [was] fair to say that in a way [she] d[id] criminal justice." She also confirmed she "work[ed] with a lot of people convicted of crime[s]."

---

[1]     Further unspecified statutory references are to the Code of Civil Procedure.

Despite this work, and her brother's conviction and incarceration, PJN 120 stated she could still be fair and follow the law.

Following questioning of PJN 120, the prosecutor sought to exercise a peremptory challenge against her. Gammage's defense counsel objected. Following an unreported discussion outside the presence of the jury, the trial court excused PJN 120.

After the jury was impaneled, the trial court allowed defense counsel to make a record of the defense objection to the peremptory challenge of PJN 120. Counsel explained, "[The defense is] making [a] *Batson* motion, basically [the prosecutor] did exclude a [B]lack female juror. With that, we submit."

Despite the defense framing the objection as a "*Batson* motion," the prosecutor expressly recognized the application of section 231.7. The prosecutor stated, "I'm not sure what the applicability of *Batson-Wheeler* is in light of [section] 231.7. If I understand correctly, there's no prima facie showing required or anything, but I am required to state a reason for exercising the peremptory challenge." The prosecutor then stated he excused PJN 120 because of her employment at Patton State Hospital. He explained he "had specific negative experiences with jurors who are psych techs at Patton State Hospital and that's why she was excused." Perhaps anticipating an argument that his reason was presumptively invalid under section 231.7, subdivision (e)(10), the prosecutor added, "And also, there does not appear to be any evidence that individuals of African-American descent predominate that employment. There's no evidence before the Court of that, thus the reason stated is valid." Finally, the prosecutor noted four other Black jurors were seated, against whom he did not exercise peremptory challenges.

4

The trial court "denie[d] the challenge under *Batson*," without any explicit reference to section 231.7. In doing so, the court confirmed the prosecutor's statement that four Black jurors remained on the jury at that time, and the court surmised people who work in facilities such as Patton State Hospital are often "more likely to be defense-oriented jurors." Finally, the court on its own noted the prosecutor might have challenged PJN 120 because her brother was in prison for murder, she had no prior jury experience, and she knew people in law enforcement through her work. Based on all these reasons, the court denied Gammage's objection to the prosecutor's use of a peremptory challenge to excuse PJN 120.

The prosecutor did not exercise any further peremptory challenges after PJN 120 was excused.

B.    *Batson/Wheeler and Section 231.7*

"A party may exercise a peremptory challenge for any permissible reason or no reason at all but exercising peremptory challenges solely on the basis of race offends the Fourteenth Amendment's guaranty of the equal protection of the laws. Such conduct also violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." (*People v. Smith* (2018) 4 Cal.5th 1134, 1146 [cleaned up]; see also *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.) The *Batson/Wheeler* analysis follows a three-step process: "First, the defendant must make a prima facie case by showing facts sufficient to support an inference of discriminatory purpose. Second, if the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a permissible, nondiscriminatory explanation for the strike. Third, if the prosecutor offers a nondiscriminatory explanation, the trial court must decide whether that explanation is genuine, or whether

5

impermissible discrimination in fact motivated the strike." (*People v. Battle* (2021) 11 Cal.5th 749, 772 [cleaned up].)

Effective January 2021, section 231.7 created an alternative to the *Batson/Wheeler* framework. The Legislature's purpose in enacting the statute was to establish "a new process for identifying unlawful bias in the use of peremptory challenges during jury selection." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3070 (2019–2020 Reg. Sess.) as amended May 4, 2020, p. 1.) To this end, the statute provides the process by which trial courts must consider objections to peremptory challenges under the provision.

Subdivision (a) of section 231.7 prohibits the "use [of] a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) Following an objection under the statute, the party seeking to exercise the peremptory challenge must state the reasons justifying the challenge. (*Id.*, subd. (c).) The trial court evaluates these reasons for exercising the peremptory challenge at issue "in light of the totality of the circumstances" to determine if "there is a substantial likelihood that an objectively reasonable person would view [actual or perceived membership in a cognizable group under subdivision (a)] as a factor in the use of the peremptory challenge." (*Id.*, subd. (d)(1).) The court analyzes only the actual reasons given by the party seeking to exercise the peremptory challenge and may not speculate about additional possible justifications. (*Ibid.*)

Certain reasons for exercising a peremptory challenge are presumptively invalid under the statute. (§ 231.7, subd. (e).) As relevant

6

here, a peremptory challenge is presumed invalid when based on the challenged prospective juror's "[e]mployment in a field that is disproportionately occupied by members [of a cognizable group] listed in subdivision (a) or that serves a population disproportionately comprised of members of [the cognizable group]." (*Id.*, subd. (e)(10).) To overcome a presumption of invalidity, "the party exercising the peremptory challenge [must] show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's [actual or perceived membership in a cognizable group], and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Id.*, subd. (e).) Clear and convincing evidence exists where the court "determine[s] that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).)

If the party exercising the peremptory challenge overcomes the presumption of invalidity, the court reverts to a consideration of the stated reason for the challenge under section 231.7, subdivision (d)(1), as previously described. (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 541 (*Jimenez*).) Specifically, the court considers whether, in light of the stated reason for exercising the peremptory challenge and the totality of the circumstances, it is substantially likely that a reasonable person would consider that race was a factor in the challenge. (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 805.) " '[S]ubstantial likelihood' " means "more than a mere possibility but less than a standard of more likely than not." (§ 231.7, subd. (d)(2)(B).) In conducting this analysis, the court may consider whether the objecting party is a member of the same cognizable group as the challenged juror; the alleged

7

victim, witnesses, or other parties are not members of that cognizable group; whether cognizable groups bear on the facts of the case; the nature of the questioning of, and answers from, the challenged juror, particularly with respect to the stated reason for the challenge or in comparison to questioning of other prospective jurors; and where the party exercising the peremptory challenge disproportionally challenged prospective jurors who are members of a cognizable group.  (*Id.*, subd. (d)(3).)

C.    *Analysis*

We review the trial court's factual findings underlying a ruling under section 231.7 for substantial evidence, while we review a court's denial of an objection under the statute de novo.  (§ 231.7, subd. (j).)  In conducting our review, we "consider only the reasons actually given by the party exercising the peremptory challenge and . . . avoid imputing [factual] findings on the trial court not expressly stated on the record."  (*Jimenez, supra*, 99 Cal.App.5th at p. 543; § 231.7, subd. (j).)  Error in denying an objection under the statute is not subject to harmless error review.  (§ 231.7, subd. (j).)

"In general, the failure to articulate an objection to a peremptory challenge forfeits the issue on appeal.  With that understanding, the purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."  (*People v. Jaime* (2023) 91 Cal.App.5th 941, 946 (*Jaime*) [cleaned up].)

In *Jaime*, the court considered a scenario, like here, where the defendant objected to a peremptory challenge only under *Batson/Wheeler*, the prosecutor alerted the trial court to the applicability of section 231.7, and the court did not acknowledge the statute in ruling on the objection.  (*Jaime, supra*, 91 Cal.App.5th at pp. 944–945.)  Despite failing to object under the statute, on appeal, Jaime argued the prosecutor's reasons for exercising the

peremptory challenge were presumptively invalid under section 231.7, subdivision (e)(1) and (3) and the People had not offered any evidence to overcome the presumption. (*Jaime,* at p. 946.) The Court of Appeal overlooked the forfeiture because it found the record sufficient to review the merit of the statutory claim. (*Id.* at pp. 946–947.) On that adequate record, the court applied the futility exception to the forfeiture rule, concluding the defendant did not forfeit his statutory claim because the trial court's ruling would not have been different had he objected under the statute. (*Ibid.*) The court cautioned, however, that its forfeiture analysis was limited to the "narrow circumstances and the precise record" of that case. (*Id.* at p. 947.)

The record in this case is different. Unlike *Jaime*, Gammage did not develop the factual basis to support his claim under subdivision (e)(10) of section 231.7 in the trial court. His contention that the prosecutor's reason for exercising a peremptory challenge against PJN 120 was presumptively invalid under section 231.7, subdivision (e)(10), requires a factual finding as to whether her job served a population disproportionately comprised of a cognizable group. (§ 231.7, subd. (e)(10).) But the factual findings necessitated by subdivision (e)(10) were neither offered by Gammage below nor found by the trial court. Rather, Gammage asks us to find the prosecutor's reasoning for excusing PJN 120 presumptively invalid under section 231.7, subdivision (e)(10), based solely on her work with people who had been convicted of crimes. To get there, Gammage would have us simply infer that the prospective juror's work with individuals convicted of crimes necessarily means she "serves a population disproportionately comprised of members of a [cognizable] group." (*Ibid.*) We decline to take that leap, for obvious reasons.

9

Further still, we cannot impute factual findings to the trial court it did not expressly state on the record. (*Jimenez, supra*, 99 Cal.App.5th at p. 543; § 231.7, subd. (j).) Consequently, Gammage's objection below was insufficient to create a record for appellate review. (*Jimenez*, at p. 543; § 231.7, subd. (f).) Had Gammage objected to the peremptory challenge under section 231.7, subdivision (e)(10), or responded to the prosecutor's assertion there was no evidence a cognizable group predominated PJN 120's field of employment, the court could have made the necessary factual determinations. Gammage did not. Thus, he forfeited his claim.[2]

Gammage vaguely asserts the trial court violated his state and federal constitutional rights by denying his objection to the prosecutor's peremptory challenge, and he discusses the state and federal constitutional standards. He does not, however, apply the constitutional standards to the trial court's ruling below, or provide any argument as to how the court's ruling violated those constitutional standards. Rather, he focuses his analysis only on the propriety of the trial court's ruling under section 231.7. We decline to address this undeveloped constitutional argument. (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5 [court need not consider constitutional claim referenced in heading but unsupported by analysis or authority].)

_____

[2] The People suggest that, because Gammage forfeited his argument under section 231.7, subdivision (e)(10), we should review his claim under the standard provided in subdivision (d)(1). That is, we should consider whether, under the totality of the circumstances, "there is a substantial likelihood that an objectively reasonable person would view [actual or perceived membership in a cognizable group] as a factor in the use of the peremptory challenge." (§ 231.7, subd. (d)(1).) We cannot conduct such an analysis, however, because the trial court made no such findings on the record below. (*Jimenez, supra*, 99 Cal.App.5th at p. 543 [section 231.7 "instructs us . . . to avoid imputing findings on the trial court not expressly stated on the record"]; § 231.7, subd. (j).)

## II.

### *Gammage's Prior Strike Conviction*

Gammage's last contention on appeal is that his prior juvenile adjudication does not qualify as a strike under the Three Strikes law. The claim is without merit and we reject it.[3]

The People alleged in the amended information that Gammage suffered a prior strike conviction for rape under Penal Code section 261. During trial, the prosecutor amended the information to allege Gammage's prior strike conviction was for a violation of Penal Code section 264.1, rape in concert by force or violence. Then, in a bifurcated proceeding, the trial court found true the allegation that Gammage's prior conviction qualified as a strike prior.

Penal Code section 667, subdivision (d)(3), provides the requirements that must be met for a prior juvenile adjudication to qualify as a strike under the Three Strikes law. Under that provision, a juvenile adjudication qualifies as a strike where: (1) the juvenile was 16 years old or older when he committed the prior offense; (2) the prior offense is listed in Penal Code section 667, subdivision (d)(1) or (2), or Welfare and Institutions Code section 707, subdivision (b); (3) the juvenile was found to be fit for placement under the jurisdiction of the juvenile court; and (4) the juvenile was adjudged a ward of the juvenile court on the basis of an adjudication under Welfare and Institutions Code section 707, subdivision (b). (Pen. Code, § 667, subd. (d)(3).)

---

[3]     Because we conclude Gammage's prior offense qualified as a strike, whether or not it resulted from a juvenile adjudication, we also reject his related contention that defense counsel was ineffective for not filing a motion to dismiss the prior strike conviction. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 217 [generally, for purpose of a claim of ineffective assistance of counsel, prejudice must be affirmatively proved].)

Gammage's claim is premised only on his personal assertion that his prior offense resulted in a juvenile adjudication for a crime that is not listed in Welfare and Institutions Code section 707, subdivision (b). However, it is irrelevant whether Gammage's prior offense was listed in Welfare and Institutions Code section 707, subdivision (b), or whether it satisfied any of the other requirements under Penal Code section 667, subdivision (d)(3). Penal Code section 667, subdivision (d)(3), applies only to prior juvenile adjudications, and Gammage's prior offense resulted in a conviction in adult criminal court. That adult conviction under Penal Code section 264.1 qualifies as a strike. (Pen. Code, §§ 667, subd. (d)(1) [offenses listed in § 667.5(c) qualify as strikes], 667.5, subd. (c)(18) [listing rape in concert in violation of § 264.1].)

Even if Gammage's prior conviction had been a juvenile adjudication, his argument still lacks merit because his prior offense for rape in concert by force or violence under Penal Code section 264.1 falls under the applicable provision of the Welfare and Institutions Code. (Welf. & Inst. Code, § 707, subd. (b)(4) [listing rape with force or violence].)

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

CASTILLO, J.